**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANTONIO PAYERO and ADAM MALDONADO, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>        v.<br><br>MATTRESS FIRM, INC.,<br><br>                           Defendant. | Case No.  7:21-cv-03061-VLB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Antonio Payero and Adam Maldonado ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Mattress Firm, Inc. ("Mattress Firm" or "Defendant") for the manufacture, marketing, and sale of the HR Platform bed frame sold under the Bed Tech brand (the "Product").[1]  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF ACTION**

1.      This is a class action complaint against Defendant Mattress Firm, Inc. for the manufacture and sale of HR Platform bed frames sold under the Bed Tech brand, all of which suffered from an identical defect in design.  Specifically, the bed frame can collapse, posing a crush hazard that can result in severe injury or death.  A bed frame that poses such a hazard is unreasonably dangerous considering the prone position of the users laying on top of the bed frame and the fact that the Product can collapse at any time.  This defect rendered the Product

---

[1] The specific bed frames in question are Bed Tech brand bed frames with the model numbers HR33, HR33XL, HR46, HR50, HR60, and HR66.

unsuitable for its principal and intended purpose.  Further, had Plaintiffs been aware of this serious defect, they would not have purchased the Product, or would have paid significantly less for it.

2.      Plaintiffs bring their claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Product for (i) violation of New York General Business Law § 349; (ii) violation of New York General Business Law § 350; (iii) fraud; (iv) unjust enrichment; (v) breach of implied warranty; and (vi) violation of the Magnuson-Moss Warranty Act.

## PARTIES

3.      Plaintiff Antonio Payero is, and at all times relevant to this action has been, a resident of Yonkers, New York and a domiciliary of New York.  In or about the spring of 2020, Mr. Payero purchased one HR Platform bed frame from a Mattress Firm store located in New York.  The model number for Mr. Payero's bed frame was HR50.  Mr. Payero purchased the Product because he believed it was fit for use as a bed frame.  However, the Product Mr. Payero purchased was not fit for use as a bed frame due to the Product's risk of collapse.  Mr. Payero would not have purchased the Product or would have paid significantly less for the Product had he known that the Product was unfit to perform its intended purpose.   Mr. Payero's Product model number was part of the Product Recall.

4.      The Product that Mr. Payero purchased began to malfunction shortly after he purchased it.  The legs of the bed frame would often fold in, causing the mattress to fold in the middle as well.

5.      Mr. Payero reviewed the Product's packaging prior to purchase.  Defendant disclosed on the packaging that the Product was a bed frame and described features typical of

2

bed frames but did not disclose the defect.  Had there been a disclosure, Mr. Payero would not have purchased the Product because the defect would have been material to him, or at the very least, he would have purchased the Product at a substantially reduced price.  Mr. Payero relied on the packaging in making his purchase decision.

6.     Mr. Payero did not submit a claim through the CPSC.  The remedy offered by the recall was insufficient because it only provided "metal clips" to allegedly strengthen the bed frame (which Mr. Payero would have to install himself), as opposed to a full refund for the defective bed frame.  Further, the CPSC's website states that "[d]ue to the extraordinary circumstances surrounding COVID-19, some of the remedies identified in recall press releases may not be available at this time."

7.     Plaintiff Adam Maldonado is, and at all times relevant to this action has been, a resident of Bronx, New York and a domiciliary of New York.  In or about the January 2021, Mr. Maldonado purchased one HR Platform bed frame from a Mattress Firm store located in New York.  The model number for Mr. Maldonado's bed frame is HR66.  Mr. Maldonado purchased the Product because he believed it was fit for use as a bed frame.  However, the Product Mr. Maldonado purchased was not fit for use as a bed frame due to the Product's risk of collapse. Mr. Maldonado would not have purchased the Product or would have paid significantly less for the Product had he known that the Product was unfit to perform its intended purpose. Mr. Maldonado's Product model number was part of the Product Recall.

8.     The Product that Mr. Maldonado purchased began to malfunction shortly after he purchased it.  While Mr. Maldonado was sitting on the Product, it collapsed down the middle, causing him to fall and hit the floor.  This fall caused physical pain to Mr. Maldonado.  When

Mr. Maldonado tried to place the Product upright again, it immediately collapsed again.  Since this incident Mr. Maldonado has not been able to use the Product at all.

9.     Mr. Maldonado reviewed the Product's packaging prior to purchase.  Defendant disclosed on the packaging that the Product was a bed frame and described features typical of bed frames but did not disclose the defect.  Had there been a disclosure of the defect, Mr. Maldonado would not have purchased the Product because the defect would have been material to him, or at the very least, he would have purchased the Product at a substantially reduced price. Mr. Maldonado relied on the packaging in making his purchase decision.

10.     Mr. Maldonado did not submit a claim through the CPSC.  The remedy offered by the recall was insufficient because it only provided "metal clips" to allegedly strengthen the bed frame (which Mr. Maldonado would have to install himself), as opposed to a full refund for the defective bed frame.  Further, the CPSC's website states that "[d]ue to the extraordinary circumstances surrounding COVID-19, some of the remedies identified in recall press releases may not be available at this time."

11.     Plaintiffs suffered economic injury from the Product Defect because they purchased an item that was worth less than what had been represented to them.

12.     Defendant Mattress Firm, Inc. is a Delaware corporation with its principal place of business at 10201 Main St, Houston, TX 77025.  Defendant markets and distributes the Product throughout the United States.  Defendant sells its products directly to consumers in Mattress Firm stores and on Mattress Firm's website.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in

controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

member is a citizen of a state different from Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant conducts

substantial business within this District and a substantial portion of the events that gave rise to

Plaintiff's claims occurred in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

does substantial business in this District and a substantial part of the events giving rise to

Plaintiff's claims took place within this District because Plaintiffs purchased his Product in this

District.

## COMMON FACTUAL ALLEGATIONS

### I.     The Bed Frame Defect

16.     Defendant Mattress Firm is a retail store franchise that owns and operates over

2,600 stores nationwide.  Among the various items sold by Defendant is the HR Platform bed

frame sold under the Bed Tech brand, which is the Product at issue here.

17.     The Product is primarily sold by Defendant, and is marketed as one of

Defendant's Products.  *See* ECF No. 11, at Ex. 1 ("Mattress Firm Platform Frame"); *id.* at Ex. 2

(same).

18.     The Product was made with a defective frame, causing the Product to often

collapse, posing a crush hazard that can result in severe injury or death (hereinafter, the "Product

Defect").  The Product Defect was substantially likely to materialize during the useful life of the

Product.

19.     About 82,000 units of the Product were sold in the U.S. at approximately $200

each.

20.     Upon information and belief, Mattress Firm sold a large number of the Products, and thus profited enormously from its failure to disclose the Product Defect sooner.

21.     The Product Defect at issue here involves a critical safety-related component of the Product, and it was unsafe to use the Product with the defective frame.  Defendant had knowledge of the defect, which was not known to Plaintiffs or class members.

22.     Defendant made partial representations to Plaintiffs and class members, while suppressing the safety defect.  Specifically, by displaying the Product and describing its features, the product packaging implied that the Product was suitable for use as a bed frame, without disclosing that it had a critical safety-related defect that could result in harm to users of the Product.

## II.     The Inadequate Recall Of The Product

23.     In March of 2021, there was a purported recall of the Product.

24.     The recall was due to a serious injury hazard associated with the Product.  Specifically, it was admitted that its Product had a defect in design and materials that caused the bed frame to collapse.

25.     The entirety of the recall remedy available to consumers was the ability to contact the Product manufacturer and request metal clips to strengthen the frame.  No financial compensation was offered to consumers.

26.     The recall allowed the manufacturer and sellers of the Product to *say* they were doing right by its customers, but in fact the recall protected Mattress Firm's profits by suppressing returns:

   (a)     The recall remedy was grossly insufficient because it in no way compensated consumers for the purchase of a dangerous and defective product.

(b)     Instead of offering cash refunds for the defective Product, Mattress Firm instead offered metal clips to allegedly "strengthen" the frame.

(c)     The Recall remedy was also insufficient because it only includes models sold from April 2020 to January 2021 despite the fact that Defendant knew or should have known that some models sold before April 2020 or after January 2021 were similarly defective based on reports sent directly to Defendant via Defendant's website.

## III.    Mattress Firm's Pre-Sale Knowledge Of The Defect

### A.    Mattress Firm Received Complaints Directly From Customers And Through The CPSC

27.    Before the recall was issued, Mattress Firm received reports of HR Platform bed frames collapsing.

28.    The United States Consumer Products Safety Commission ("CPSC") operates a website where consumers can post complaints about unsafe products and provide details about any incidents they experienced.

29.    Online safety reports to the CPSC show that Mattress Firm, knew or should have known of the defect, yet it continued to sell the defective products anyway.

30.    Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer and retailers. Defendant also monitors safety complaints from the CPSC, and thus Defendant would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

31.    In total, Defendant and the manufacturer have received at least 100 reports of the Product collapsing.[2] This is an unusually high number of complaints for a product, and the

---

[2] CPSC, *Global Home Imports Recalls Platform Bed Frames Due to Serious Injury Hazard*, https://www.cpsc.gov/Recalls/2021/global-home-imports-recalls-platform-bed-frames-due-to-serious-injury-hazard.

unusually high number of complaints here put Defendant on notice of the Product Defect.  The

similarity of complaints also would have put Defendant on notice that the complaints were not

the result of user error or anomalous incidents, but instead were the result of a systemic problem

with the Products.

32.     Every time the CPSC's website describes a consumer complaint, the website also

discloses the date when CPSC sent that complaint to the manufacturer.  This is separate from the

portion of the safety complaint where the consumer states whether he or she independently

contacted the manufacturer.  As alleged above, the above-referenced complaints were sent to

Defendant and the manufacturer by the CPSC shortly after being submitted to the CPSC.

33.     For each of the following reasons, Mattress Firm's management knew or should

have known about the complaints referenced above as soon as they began appearing on the

CPSC website:

> (a)     Mattress Firm was repeatedly contacted directly by consumers and
> by the CPSC about the Product Defect.
>
> (b)     The CPSC website is a government-run repository for complaints
> about safety-related defects, and many of Mattress Firm's products
> appear on the website.  The CPSC website can provide businesses
> with early warnings of product defects, and monitoring reports is
> easy because users can search for reports by company names.
> Hence, since at least 2011, it required negligible effort for Mattress
> Firm's management and other personnel to visit the CPSC website
> and view a list of reports of safety incidents related to the Product,
> including reports about the Product Defect at issue here.
>
> (c)     Mattress Firm knows about the CPSC's website because it is a high-
> profile government agency that deals with complaints about a
> number of products sold by Defendant, and because Mattress Firm
> would have been contacted directly each time a consumer
> complained to the CPSC.
>
> (d)     Mattress Firm also knew or should have known about the defect
> because of the similarity of complaints.  The fact that so many
> customers made similar complaints indicates that the complaints

were not the result of user error or anomalous incidents, but instead a systemic problem with the products at issue here. The reports and complaints from consumers also put Mattress Firm on notice that the products were experiencing unusually high levels of complaints about the Product Defect at issue here, especially when compared to other bed frames.

34.     Defendant received the majority of customer complaints before the named Plaintiffs here purchased their Products.

35.     Other buyers of the Product directly notified Mattress Firm of the Defect on Defendant's website.

36.     Exemplars of some of these reviews can be find below. These complaints are by no means exhaustive (original spelling is unedited):

(a)     In the spring of 2020, a verified purchaser of the Product who used the username "YSun" wrote a review titled, "The bed frame collapsed on us." The review further stated "The bed frame we got was defective and it completely collapsed on us one night. We tried to fix it but nothing worked. It caused us so much pain and trouble. Please save yourself the trouble and just buy a real bed instead."

(b)     In the spring of 2020, a verified purchaser of the Product who used the username "Not happy at all 1" wrote a review titled, "platform is no good." The review further stated "The first one was late and when I git it it broke within 2 days. They sent out another one and it broke in a week."

(c)     In the spring of 2020, a verified purchaser of the Product who used the username "annoyedignoredandbored" left a review titled, "broke after 2 days." The review further stated "The worst frame ever. It broke after two days. I rolled over and got a special wake up by falling. 'White glove delivery.'"

(d)     In the spring of 2020, a verified purchaser of the Product who used the username "teresasherie" left a review titled, "weak legs." The review further stated "this frame is not strong, the middle legs broke after the 4 days of having it. you can not move around on the bed with out the legs moving alot. very weak frame."

(e)     In the spring of 2020, a verified purchaser of the Product who used the username "Sgeila G" wrote a review titled, "Buyer beware!"

The review further stated "Cheap,cheap,cheap! This bedframe broke in less than 2 weeks! Never again!"

(f)     In the spring of 2020, a verified purchaser of the Product who used the username "Concerned mom" wrote a review titled, "Don't do it."  The review further stated "Horrible. Broke after one nights sleep. Don't buy."

(g)     In the spring of 2020, a verified purchaser of the Product who used the username "Malina" wrote a review titled, "Not good."  The review further stated "Bought this on April 30th and it broke on May 26th. The middle legs snapped in half and made the bed dip."

(h)     In the spring of 2020, a verified purchaser of the Product who used the username "Charlie Chardonneaux" wrote a review titled, "Lasted 1.5 Weeks :(" The review further stated "Metal frame broke within the first two weeks. Middle leg on the right hand side no longer locks in place, and it collapses whenever any significant pressure is placed on it."

(i)     In the spring of 2019, a verified purchaser of the Product who used the username "Lunar mask" wrote a review titled, "The frame broke."  The review further stated "The frame is bent badly and won't unbend. Worst frame I've had."[3]

37.     Mattress Firm also would have had notice of the Product Defect as a result of product returns.

38.     In short, information from customer returns, complaints directly to Mattress Firm, and information obtained from the CPSC, whether alone or in the aggregate, would have put Mattress Firm on notice of the defect.  Nonetheless, Mattress Firm failed to recall the Product until March 2021, putting innumerable consumers at risk in the meantime.

---

[3] https://www.mattressfirm.com/mattress-firm/deluxe-raised-metal-platform-frame-easy-assembly/mfi121841.html.

## CLASS REPRESENTATION ALLEGATIONS

39.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Product (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

40.     Plaintiffs also seek to represent a subclass of all Class Members who purchased the Product in the State of New York (the "New York Subclass") (collectively with the Class, the "Classes").

41.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

42.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and New York Subclass ("Class Members" and "Subclass Members," respectively).  However, given the size of the recall and the number of retail stores in the United States selling Defendant's Products, Plaintiffs believe that Class and Subclass Members are so numerous that joinder of all members is impracticable.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

(b)     whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be

inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

(d) whether Plaintiffs and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

44. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the New York General Business Law § 349 and § 350.

45. Plaintiff's claims are typical of those of the Class because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Product, and Plaintiffs sustained damages from Defendant's wrongful conduct.

46. Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Classes.

47. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the unsatisfactory nature of Defendant's recall.

48. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation Of New York General Business Law § 349

49.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiffs brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

51.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

52.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

53.     Plaintiffs and members of the New York Subclass are consumers who purchased the Product from Defendant for their personal use.

54.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Product (i) would not contain a dangerous defect and (ii) are generally recognized as safe for use. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product.

55.     The foregoing deceptive acts and practices were directed at consumers.

56.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Product to induce consumers to purchase the same.

57.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

58. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiffs and members of the New York Subclass have sustained from having paid for and used Defendant's products.

59. As a result of Defendant's violations, Plaintiffs and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect; (b) they paid a premium price in the amount of the full purchase price of the Product; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

60. On behalf of himself and other members of the New York Subclass, Plaintiffs seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York General Business Law § 350

61. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

62. Plaintiffs bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

63. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

64. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

65. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

66.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed towards consumers.  Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Product.

67.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

68.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

69.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiffs and the New York Subclass have suffered and continue to suffer economic injury.

70.     As a result of Defendant's violations, Plaintiffs and members of the New York Subclass have suffered damages due to said violations because: (a) they would not have purchased the Product on the same terms if they knew that the Product had a dangerous defect and are not safe for use; (b) they paid a premium price in the amount of the full purchase price of the Products; and (c) the Product does not have the characteristics, uses, benefits, or qualities as promised.

71.     On behalf of themselves and other members of the New York Subclass, Plaintiffs seeks to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT III
**Fraudulent Omission**

72.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

73.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

74.     This claim is based on fraudulent omissions concerning the safety of consumers who use the Product.  As discussed above, Defendant failed to disclose that the Product had a dangerous defect.

75.     The false and misleading omissions were made with knowledge of their falsehood.  Defendant is a nationwide retailer who knew of reports of the Product's defective and dangerous nature.  Nonetheless, Defendant continued to sell its worthless bed frames to unsuspecting consumers.

76.      The false and misleading omissions were made by Defendant, upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the proposed Classes to purchase the Product.

77.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Classes, who are entitled to damages and punitive damages.

## <u>COUNT IV</u>
**Unjust Enrichment**

78.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

79.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

80.     Plaintiffs and members of the Classes conferred benefits on Defendant by purchasing the Product.

81.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class and Subclass Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was unfit for use as a bed frame.  These omissions caused injuries to Plaintiffs and Class and Subclass members because they would not have purchased the Product if the true facts were known.

82.     Retention of those moneys also is unjust and inequitable because, as alleged above, Mattress Firm commenced an ineffective recall that did not permit refunds as a remedy, thereby protecting profits Mattress Firm collected from selling the defective products.

83.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT V
### Breach of Implied Warranty

84.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

86.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product (i) would not contain a safety-related defect and (ii) was generally safe for consumer use.

87.     Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract

description, the Product was not of fair or average quality within the description, and the Product was unfit for its intended and ordinary purpose because the Product manufactured by Defendants was defective in that it contained a defect that made the Product unreasonably dangerous, and as such is not generally recognized as safe for consumer use.  As a result, Plaintiffs and Class and Subclass Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

88.     Additionally, Plaintiffs and Class and Subclass Members were harmed because the Product failed almost immediately after Plaintiffs and Class and Subclass Members purchased the product, a period far shorter than the implied warranty.

89.     Plaintiffs and Class and Subclass Members purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

90.     The Product was not altered by Plaintiffs or Class and Subclass Members.

91.     The Product was defective when it left the exclusive control of Defendant.

92.     Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and Class and Subclass Members.

93.     The Product was defectively manufactured and unfit for its intended purpose, and Plaintiffs and Class and Subclass Members did not receive the goods as warranted.

94.     Defendant was in vertical privity with Plaintiffs and Class and Subclass Members because it sells its products directly to consumers in Mattress Firm's stores and on the Mattress Firm website.

95.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class and Subclass Members have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product contained

the Product Defect, making it unsafe for consumer use; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

## COUNT VI
### Violation Of The Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*

96.     Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

97.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

98.     The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

99.     Plaintiffs and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

100.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

101.    In connection with the marketing and sale of the Product, Defendant impliedly warranted that the Product was fit for use as bed frames.  The Product was not fit for use as a bed frame due to the defect described in the allegations above.

102.    By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiffs and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and the Class and Subclass Members.

103.    Plaintiffs and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product if they knew the truth about the defective nature of the Product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)   For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass Members;

(b)   For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiffs, the nationwide Class, and the New York Subclass on all counts asserted herein;

(d)   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)   An award of statutory penalties to the extent available;

(f)   For pre-judgment interest on all amounts awarded;

(g)   For an order of restitution and all other forms of monetary relief;

(h)   For an order awarding Plaintiffs, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

Dated: June 9, 2021                         Respectfully submitted,

                                            **BURSOR & FISHER, P.A.**

                                            By:   _/s/ Max S. Roberts_
                                                      Max S. Roberts

                                            Max S. Roberts
                                            888 Seventh Avenue, Third Floor
                                            New York, NY 10019
                                            Telephone: (646) 837-7150
                                            Facsimile:  (212) 989-9163
                                            Email: mroberts@bursor.com

                                            **BURSOR & FISHER, P.A.**
                                            Joel D. Smith (*Pro Hac Vice forthcoming*)
                                            1990 North California Blvd., Suite 940
                                            Walnut Creek, CA  94596
                                            Telephone: (925) 300-4455
                                            Facsimile: (925) 407-2700
                                            Email: jsmith@bursor.com

                                            *Attorneys for Plaintiffs*