**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIO PAYERO and ADAM MALDONADO, individually and on behalf of all others similarly situated,<br><br>                       Plaintiffs,<br><br>    v.<br><br>MATTRESS FIRM, INC. and GLOBAL HOME IMPORTS, INC.,<br><br>                    Defendants. | Case No. 7:21-cv-03061-VLB<br><br>Hon. Vincent L. Briccetti |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: January 9, 2023

**BURSOR & FISHER, P.A.**
Max S. Roberts
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com
        jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: jsmith@bursor.com

*Proposed Class Counsel*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ................................................................................................................. 1

THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS ................................ 2

TERMS OF THE SETTLEMENT ....................................................................................... 4

I. CLASS DEFINITION ............................................................................................ 4

II. MONETARY RELIEF ............................................................................................ 4

III. NON-MONETARY RELIEF .................................................................................. 5

IV. RELEASE .............................................................................................................. 5

V. NOTICE AND ADMINISTRATION EXPENSES .................................................. 6

VI. INCENTIVE AWARDS ......................................................................................... 6

VII. ATTORNEYS' FEES AND EXPENSES .............................................................. 6

ARGUMENT ...................................................................................................................... 6

I. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ........................................................................................................ 6

  A. The *Grinnell* Factors ............................................................................... 9

    1. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) ...................................................... 9

    2. The Reaction Of The Class (*Grinnell* Factor 2) ...................... 10

    3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ................................................................................................. 10

    4. Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6) ........................ 11

    5. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ........................................................... 12

    6. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9) ............................................. 12

  B. The Rule 23(e)(2) Factors ...................................................................... 13

    1. The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A) ................ 13

    2. The Settlement Was Negotiated At Arm's Length .................... 14

    3. The Settlement Provides Adequate Relief To The Class ........... 14

    4. The Settlement Treats All Class Members Equally .................... 17

II. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...................................................................................................... 17

  A. The Proposed Settlement Class Meets the Requirements of Rule 23(a) .................................................................................................... 18

|  |  | 1. | Numerosity | 18 |
|  |  | 2. | Commonality | 18 |
|  |  | 3. | Typicality | 19 |
|  |  | 4. | Adequacy | 19 |
|  | B. | The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) | | 20 |
|  |  | 1. | Predominance | 20 |
|  |  | 2. | Superiority | 21 |
| III. | PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL | | | 22 |
| IV. | THE PROPOSED NOTICE PLAN SHOULD BE APPROVED | | | 22 |
|  | A. | The Content Of The Proposed Class Notice Complies With Rule 23(c)(2) | | 22 |
|  | B. | The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2) | | 23 |
| CONCLUSION | | | | 24 |

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................. 21

*Beckman v. KeyBank,*
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................... 10, 11

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010) ................................................................................. 21

*Buffington v. Progressive Advanced Ins. Co.,*
    342 F.R.D. 66 (S.D.N.Y. 2022) ........................................................................... 19

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................................... 8

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................... 19

*Ebin v. Kangadis Food Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................... 19, 20

*Fleisher v. Phoenix Life Ins. Co.,*
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ..................................................... 13

*Flores v. CGI Inc.,*
    2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ................................................... 11

*Foos v. Ann, Inc.,*
    2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ..................................................... 13

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................... 7

*George v. Shamrock Saloon II, LLC,*
    2021 WL 3188314 (S.D.N.Y. July 28, 2021) ..................................................... 23

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................................... 12

*Godson v. Eltman, Eltman, & Cooper, P.C.,*
    328 F.R.D. 35 (W.D.N.Y. 2018) ......................................................................... 10

*Gordon v. Vanda Pharmaceuticals Inc.,*
    2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ................................................... 17

iii

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)..............................................................16

*Hill v. County of Montgomery*,
  2020 WL 5531542 (N.D.N.Y. Sept. 14, 2020) ..........................................................21

*Holick v. Cellular Sales of New York, LLC*,
  2022 WL 3265133 (N.D.N.Y. July 25, 2022) .........................................................6, 7

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................14, 16

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ....................................................................................13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................13, 15, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .........................................................8, 9

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................................21, 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ..........................................................10

*Jara v. Felidia Restaurant, Inc.*,
  2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018).............................................7, 14, 23

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015)......................................................................................18

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ...............................................................................8

*Kaupelis v. Harbor Freight Tools USA Inc.*,
  2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ..........................................................15

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
  2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ...................................................19, 21

*Lowe v. NBT Bank, N.A.*,
  2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022)...............................11, 18, 19, 21

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007).................................................................................12, 16

*McLaughlin v. IDT Energy*,
  2018 WL 3642627 (E.D.N.Y. July 30, 2018) ...........................................................9

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................. 17

*Pacheco on Behalf of Ophthotech Corporation v. Guyer*,
    2022 WL 16647755 (S.D.N.Y. Nov. 2, 2022) .................................................. 7

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)........................................ 9, 10, 11

*Peoples v. Annucci*,
    180 F. Supp. 3d 294 (S.D.N.Y. 2016).............................................................. 7

*Perks v. TD Bank, N.A.*,
    2022 WL 1451753 (S.D.N.Y. May 9, 2022) .............................................. 13, 16

*Philemon v. Aries Capital Partners, Inc.*,
    2019 WL 13224983 (E.D.N.Y. July 1, 2019)....................................... 12, 20, 21

*Retta v. Millennium Prods., Inc.*,
    2017 WL 5479637 (C.D. Cal. Aug. 22, 2017).................................................. 15

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)............................................................................ 20

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ................................................... 15

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) .................................................................. 9

*Trinidad v. Pret a Manger (UDS) Ltd.*,
    2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).......................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................... 7, 8

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)............................................................. 8

## STATUTES

28 U.S.C. § 1712............................................................................................................ 13

28 U.S.C. § 1715............................................................................................................ 24

**RULES**

Fed. R. Civ. P. 3(e)(2) ........................................................................................... 8, 13

Fed. R. Civ. P. 23 ................................................................................................. passim

Fed. R. Civ. P. 26(f) ................................................................................................. 3

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ............................................................ 7

Plaintiffs Antonio Payero and Adam Maldonado ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  The Settlement Agreement ("Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of Max S. Roberts ("Roberts Decl.").

## INTRODUCTION

At the January 28, 2022 hearing denying Mattress Firm's Motion to Dismiss, the Court made the following remarks:

> You know, the word "recall," I know that there's a lot of argument between you folks about the word "recall," it doesn't feel exactly like a recall.  I mean, I think I know what a recall is because I get these notices all the time. You know, for my car, you gotta bring it in and replace the x, y, z widget and such-and-such valve whatever, *bring it on in and we'll do it for free. That sounds like a recall.*  That's not really what happened here. What happened was, you know, *it didn't say anything about giving you your money back if you bring in the bed frame* or bring it in and we'll fix it for you, it says, yeah, contact the manufacturer and they'll send you some clips that you can -- if you're handy, you can fix it yourself, so, I don't know, the word "recall" doesn't seem to quite fit that, but I'm not sure that it really matters one way or the other.

1/28/2022 Hearing Transcript, at 24:19-25:7 (Exhibit 2 to the Roberts Decl.) (emphasis added).

After nearly two years of litigation and extended settlement discussions with the assistance of a neutral mediator, the Honorable Frank Maas (Ret.) of JAMS, the Parties have reached a Settlement that tracks what the Court had in mind.  If Class Members choose to bring their Class Product into any of Mattress Firm's nearly 2,400 stores[2] within two years of the effective date, they will receive a full refund of the purchase price of their Class Product. Settlement ¶ III.C.1.ii.  Even if Class Members received the Class Product for free—such as if the Class Product was included with the purchase of a mattress—those Class Members will still be eligible for financial compensation of up to $115, depending on the size of the Class Product.

---

[1] All capitalized terms not otherwise defined herein have the same definitions as set out in the settlement agreement.  *See* Roberts Decl., Ex. 1.

[2] https://www.scrapehero.com/location-reports/Mattress%20Firm-USA/.

*Id*.  Class Members who choose to keep their Class Product may file a claim to receive a Bed Tech gift card of $125.  *Id.* ¶ III.C.1.i.  Both the refund option and the gift card option are subject to a cap of $4.9 million, *exclusive* of attorneys' fees and costs, incentive awards, and notice and administration costs.  *Id.* ¶ III.C.2.  And all Class Members will *automatically* receive an extended warranty from the later of two years from the end of the standard warranty or two years from the Effective Date *without the need to submit a Claim Form*, ensuring that these Class Members will be protected if their Class Product collapses within the extended warranty period after the Settlement is administered.  *Id.* ¶ III.B.2.

The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiffs respectfully request that the Court (i) grant preliminary approval of the Settlement; (ii) provisionally certify the Class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (iii) appoint Bursor & Fisher, P.A. as Class Counsel; (iv) appoint Antonio Payero and Adam Maldonado as the Class Representatives for the Class; and (5) approve the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits B-D to the Settlement, and direct distribution of the Proposed Notice.

## THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

On April 8, 2021, Plaintiff Payero filed a putative class action against Defendant Mattress Firm, Inc. ("MFI") for violations of GBL §§ 349 and 350, fraud, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment, alleging that MFI sold Bed Tech-brand HR Platform bed frames that were made with a defective frame, causing the bed frame to often collapse, posing a crush hazard that can result in serious injury or death (ECF No. 1).  Plaintiff Payero also alleged MFI's recall remedy of sending metal clips to consumers was

insufficient.  *Id*.  On June 9, 2021, Plaintiffs filed a First Amended Complaint, adding Plaintiff

Maldonado (ECF No. 14).

On June 30, 2021, MFI filed a Motion to Dismiss the First Amended Complaint (ECF

No. 16).  Briefing on the motion was completed on August 4, 2021 (ECF Nos. 20-23).  On

January 7, 2022, the Court granted in part and denied in part the motion to dismiss (ECF No. 24).

Specifically, the Court denied the motion as to Plaintiffs' claims for violations of GBL

§§ 349 and 350, breach of implied warranty, and violations of the Magnuson-Moss Warranty

Act, and granted the motion as to Plaintiffs' claims for fraud and unjust enrichment.  *Id*.  On

January 10, 2022, the Court issued a notice of an initial status conference to take place on

January 28, 2022.

On January 13, 2022, in preparation for the status conference, Plaintiffs and MFI held a

Fed. R. Civ. P. 26(f) conference.  Roberts Decl. ¶ 5.  During the 26(f) conference, the Parties

discussed their interest in settlement.  *Id*.  On January 28, 2022, at the initial status conference,

the Parties informed the Court of these settlement discussions.  *Id*. Ex. 2, 1/28/2022 Hearing

Transcript at 21:20-22:7.  The Parties also informed the Court that Plaintiffs intended to amend

their complaint to add Defendant Global Home Imports, Inc. ("GHI"), who was the manufacturer

and distributor of the Class Products.  On February 1, 2021, Plaintiffs filed their Second

Amended Complaint, adding GHI as a defendant (ECF No. 31).  On February 23, 2022, MFI

filed its answer to the SAC (ECF No. 39).  On March 1, 2022, GHI filed its answer to the SAC

(ECF No. 41).

On May 11, 2022, the Parties attended a full-day mediation with the Hon. Frank Maas

(Ret.) of JAMS.  Roberts Decl. ¶ 6.  In advance of the mediation, the Parties exchanged

information relevant to their claims and defenses, including (i) the number of Class Products sold

to consumers that had been recalled, (ii) the number of consumers who requested metal clips

pursuant to Defendants' recall, (iii) the average price of the Class Products, and (iv) any insurance available to either Defendant.  Roberts Decl. ¶ 7.  This is largely the same information that would have been produced had the case proceeded to formal discovery.  *Id*.  Accordingly, the Parties were sufficiently informed at the time of the mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement.  *Id*.

While the Parties did not completely resolve the matter at the mediation, the Parties continued to negotiate a settlement in good faith and with the assistance of Judge Maas for several months after the mediation.  *Id*. at ¶ 8.  In October 2022, the Parties came to an agreement on all material terms and began drafting a full settlement agreement.  *Id*.

## TERMS OF THE SETTLEMENT

### I.    CLASS DEFINITION

The "Class" or "Class Members" are defined as all residents of the United States who purchased a Bed Tech-brand HR Platform bed frame bearing the Model Nos.  HR33, HR33XL, HR46, HR50, HR60, or HR66.[3]  Settlement ¶ I.G.  The "Class Period" extends from April 8, 2015 through April 8, 2021.  *Id.* ¶ I.K.

### II.   MONETARY RELIEF

Class Members who return their Class Product to a Mattress Firm store within two years of the Effective Date shall receive a full refund from MFI of the amount that the Class Member paid for the Class Product (including tax and delivery charges as applicable).  Settlement ¶ III.C.1.ii.  For Class Members who received their Class Product for free (*e.g.*, if it was included

---

[3] Excluded from the Class are: (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; and (c) all persons who timely submit Request for Exclusion from the Class.

for free along with the purchase of a mattress), those Class Members may return their Class

Product to a Mattress Firm store within two years of the Effective Date for a cash refund of up to

$115, depending on the size of the Class Product.  *Id.* (listing refund schedule for Class

Products).  Class Members who do not wish to return their Class Product will receive a $125 Bed

Tech gift card from GHI.  *Id.* ¶ III.C.1.i.

To receive either a refund or a Gift Card, Class Members must submit a Claim Form

along with a Proof of Purchase.  Settlement ¶ VII.F.  Refunds and Gift Cards shall be capped at

$4.9 million, exclusive of Settlement Administration Costs, any Fee Award and incentive

awards, and any other costs, expenses, and fees associated with the Settlement.  *Id.* ¶¶ III.C.2,

V.A.  If the total value of all Valid Claims exceeds $4.9 million, then the amounts of the Gift

Card payments and refunds will be reduced *pro rata* as necessary.  *Id.* ¶ III.C.2.

## III.    NON-MONETARY RELIEF

All Class Members will automatically receive an extended warranty of the later of two

years from the end of the Class Member's standard warranty or two years from the Effective

Date.  Settlement ¶ III.A.2.  Class Members are not required to fill out a Claim Form to receive

the extended warranty.

## IV.    RELEASE

In exchange for the relief described above, Defendants, each of their related affiliated

entities, as well as all "Released Parties" as defined in Settlement ¶ I.CC, will receive a full

release of all claims that in any way relate to the propensity for the Class Products to collapse.

*See* Settlement ¶¶ I.BB-DD, VI.A-D (full releasing language).  The Release does not include

claims for personal injuries and property damage (other than damage to the Class Product).  *Id.*

¶ I.BB.

## V.     NOTICE AND ADMINISTRATION EXPENSES

Defendants shall pay all Settlement Administration Expenses in accordance with the schedule set forth in the Settlement Agreement.  Settlement ¶ IV.G.  Settlement Administration Expenses shall be paid in addition to, and separate from, any awards paid to Class Members, and shall not derogate in any way from any relief due to the Class.  *Id.* ¶ III.C.2.

## VI.    INCENTIVE AWARDS

In recognition for their efforts on behalf of the Class, Defendants have agreed that Plaintiffs may receive, subject to Court approval, incentive awards of $5,000 each as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Litigation.  Settlement ¶ V.B.  Any incentive awards shall be paid by Defendants in addition to, and separate from, any awards paid to Class Members, and shall not reduce any relief due to the Class.  *Id.* ¶¶ III.C.2, V.A.

## VII.   ATTORNEYS' FEES AND EXPENSES

Subject to approval by the Court, Class Counsel will petition, and Defendants will pay, attorneys' fees, costs, and expenses of no more than eight-hundred twenty-five thousand dollars and zero cents ($825,000).  Settlement ¶ V.C.  Any attorneys' fees, costs, and expenses shall be paid by Defendants in addition to, and separate from, any awards paid to Class Members, and shall not reduce any relief due to the Class.  *Id.* ¶¶ III.C.2, V.A.

## <u>ARGUMENT</u>

## I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Preliminary approval is the first step in the settlement process. It allows notice to be provided and affords interested parties the opportunity to comment on or object to the settlement."  *Holick v. Cellular Sales of New York, LLC*, 2022 WL 3265133, at *2 (N.D.N.Y. July 25, 2022) (cleaned up).  "Following notice, the Court can hold a hearing, receive input on

the proposed settlement, and make a final judgment as to the propriety and fairness of the settlement." *Id.* (cleaned up).

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "Courts have discretion regarding the approval of a proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018) (Carter, J.). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Id*. "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Holick*, 2022 WL 3265133, at *2. "To grant preliminary approval, a court need only find probable cause to submit the settlement proposal to class members." *Pacheco*, 2022 WL 16647755, at *1 (cleaned up). "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members. NEWBERG § 11.25. "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

> A.   **The *Grinnell* Factors**
>
> > 1.   **Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

"[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022). As such, courts have consistently held that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

As discussed above, Plaintiffs largely prevailed on MFI's Motion to Dismiss, and the Parties have engaged in informal discovery that involved largely the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Roberts Decl. ¶ 7. The next steps in the litigation would presumably have been depositions of the Parties, substantial electronically stored information discovery, and contested motions for summary judgment and class certification, which would be costly and time-consuming for the Parties and the Court and create a risk that a litigation class would not be certified and/or that the Class would recover nothing at all. *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor weighed in favor of settlement approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial"). Thus, while Plaintiffs are confident in the merits of this case, there is no guarantee that they will safely land the proverbial plane. Moreover, "[e]ven assuming that plaintiffs were successful in defeating any pretrial

9

motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (internal quotations omitted).

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.  It includes up to $4.9 million in value to Class Members in the form of full refunds and gift cards, and that does not include the additional value added by an extended warranty to protect Class Members from future damage to their Class Products.  Settlement ¶ III.  This *Grinnell* factor weighs in favor of preliminary approval.

### 2.     The Reaction Of The Class (*Grinnell* Factor 2)

"Since no notice has been sent, consideration of this factor is premature."  *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).  Plaintiffs are unaware of any particular opposition to the Settlement.

### 3.     Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"This factor asks[] whether … counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement."  *Pearlstein*, 2022 WL 4554858, at *4 (cleaned up).  As discussed above, Plaintiffs largely defeated MFI's Motion to Dismiss, and the Parties conducted informal discovery that involved the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Roberts Decl. ¶ 7.  Both sides have also prepared mediation statements setting forth their relevant positions and participated "in a day-long mediation allowed them to further explore the claims and defenses."  *Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013); *see also* Roberts Decl. ¶ 6.  Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that "Plaintiffs obtained sufficient discovery to weigh the

strengths and weaknesses of their claims and to accurately estimate the damages at issue."

*Beckman*, 293 F.R.D. at 475.

  **4.**  **Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6)**

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together."

*Pearlstein*, 2022 WL 4554858, at *5 (internal quotations omitted).  In weighing the risks of

certifying a class and establishing liability and damages, "the Court is not required to decide the

merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the

outcome of the case."  *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30,

2022) (cleaned up).  "[R]ather, the Court need only assess the risks of litigation against the

certainty of recovery under the proposed settlement."  *Flores v. CGI Inc.*, 2022 WL 13804077, at

*7 (S.D.N.Y. Oct. 21, 2022) (internal quotations omitted).

  "Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims

asserted against [Defendants], they also recognize the risks and uncertainties inherent in pursuing

the action through class certification, summary judgment, trial, and appeal."  *Lowe*, 2022 WL

4621433, at *8.  In particular, Plaintiffs would face "[t]he risk of obtaining … class certification

and maintaining [it] through trial," which "would likely require extensive discovery and

briefing."  *Beckman*, 293 F.R.D. at 475.  And "[e]ven assuming that the Court granted

certification, there is always the risk of decertification after the close of discovery."  *Lowe*, 2022

WL 4621433, at *8; *see also Flores*, 2022 WL 13804077, at *8 ("The risks attendant to

certifying a class and defending any decertification motion supports approval of the

settlement.").  Approval of the Settlement obviates the "[r]isk, expense, and delay" of further

litigation, and these *Grinnell* factors thus support preliminary approval.  *Lowe*, 2022 WL

4621433, at *8.

      **5.**    **Defendant's Ability To Withstand A Greater Judgment**
                (***Grinnell* Factor 7**)

While Defendants could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair." *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at \*12 (E.D.N.Y. July 1, 2019).

      **6.**    **The Settlement Amount Is Reasonable In Light Of The**
                **Possible Recovery And The Attendant Risks Of Litigation**
                (***Grinnell* Factors 8 And 9**)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Philemon*, 2019 WL 13224983, at \*12.  Instead, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Id*.  Moreover, when a settlement assures immediate payment of substantial amounts to Class Members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, \*5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").  To that end, Class Counsel has made at least \$4.9 million in value available to Class Members.  Settlement, ¶ III.C.2.  The Settlement provides for

up to $4.9 million in full cash refunds or gift cards.[4] On top of this, the extended warranty issued

to Class Members automatically provides Class Members with additional non-monetary value

that the Court must account for in valuing the Settlement.  *Fleisher v. Phoenix Life Ins. Co.*, 2015

WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015) ("The non-monetary benefits also provide very

substantial benefits to the Class."); *Perks v. TD Bank, N.A.*, 2022 WL 1451753, at *2 (S.D.N.Y.

May 9, 2022) ("When calculating the overall settlement value for purposes of the 'percentage of

the recovery' approach, the Court has to consider the value of both the monetary and non-

monetary benefits conferred on the Class.").  Thus, the $4.9 million in monetary relief combined

with the substantial non-monetary relief easily meets or exceeds what Class Members would

have recovered at trial.

## B.   The Rule 23(e)(2) Factors

### 1.   The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's

interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange*

*Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment*

*Card I*") (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class

---

[4] The inclusion of Gift Cards does not make this a "coupon settlement" under to the Class Action Fairness Act for at least two reasons.  *First*, the Gift Cards are not "coupons" but "vouchers." "The distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise or services." *Foos v. Ann, Inc.*, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (emphasis in original); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-51 (9th Cir. 2015) (concluding $12 gift cards were not a "coupon settlement" under CAFA).  The Gift Cards here allow the purchase of a number of items *for free* on the Bed Tech website.  And *second*, the Gift Cards are not the only relief provided for in the Settlement, and instead are only an option alongside full cash refunds.  *Foos*, 2013 WL 5352969, at *2 ("[H]aving a coupon *option* does not necessarily transform a class action settlement into a coupon settlement under CAFA … Although the class members here have the option of receiving a coupon instead of obtaining a voucher, the Court has not found any case law to suggest that such an option *requires* the class action to be deemed a coupon settlement as described in 28 U.S.C. § 1712.") (emphasis in original).

members' interests because they suffered the same injuries": they purchased defective Class

Products that were prone to collapse (and, in fact, did collapse).  *In re GSE Bonds Antitrust*

*Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an

interest in vigorously pursuing the claims of the class." *Id.* (internal quotations omitted).

Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations

and responsibilities of Class Counsel.  Roberts Decl. at Ex. 3 (Firm Resume).

### 2.    The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced,

capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a

presumption of fairness."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal

quotations omitted).  Further, "[a] settlement like this one, reached with the help of a third-party

neutral, enjoys a presumption that the settlement achieved meets the requirements of due

process." *Jara*, 2018 WL 11225741, at *2 (cleaned up).  Here, both counsel for Plaintiffs and for

Defendants are experienced in class action litigation.  Moreover, the Parties participated in a

mediation before Judge Maas and engaged in protracted settlement discussions.  Roberts Decl.

¶¶ 6, 8.

### 3.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii)

the effectiveness of any proposed method of distributing relief to the class, including the method

of processing class-member claims, if required; (iii) the terms of any proposed award of

attorney's fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

***"The costs, risks, and delay of trial and appeal."***  This factor "subsumes several

*Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation;

(ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of

maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted *supra*,

the Settlement has met each of these *Grinnell* factors.  Argument §§ I.A, *supra*.

> ***"The effectiveness of any proposed method of distributing relief to the class."***  Class

Members need only submit a simple claim form—and return their Class Product to one of MFI's

nearly 2,400 stores if they so choose—to receive significant monetary relief.  This is a

reasonable method of distributing relief to Class Members, especially given the Court's

comments that an adequate recall would have involved Class Members getting their "money

back if [they] bring in the bed frame."  1/28/2022 Hearing Transcript, at 25:2-3; *see also*

*Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at *6 (C.D. Cal. Jan. 12, 2022)

(finding distribution effective where "Class Members who still owned a Class Product could

return them at any of Harbor Freight's nearly 1,200 stores" or "complete [a] claim form online").

Further, a claims process is necessary to give Class Members the option to choose

between the refund option and the Gift Card option.  *Shames v. Hertz Corp.*, 2012 WL 5392159,

at *12 (S.D. Cal. Nov. 5, 2012) ("[T]he actual intent of the claims process is to allow class

members the opportunity to choose between several payment options.  The parties would

otherwise have no way of knowing whether a particular class member wants to receive the cash

option or the rental voucher.") (cleaned up).  In addition, Class Counsel has regularly

orchestrated notice plans that have achieved high claims rates.  *See, e.g.*, *Retta v. Millennium

Prods., Inc.*, 2017 WL 5479637, at *3 (C.D. Cal. Aug. 22, 2017) (in claims made deal with no

direct notice, entire $8.25 million cap "exhausted" and "not one dollar of the $8.25 million will

revert to Defendants"); *Bayol v. Health-Ade LLC*, Case No. 3:18-cv-1462, ECF No. 55, at 1:15-

19 (claims made settlement in which entire $3,997,500 fund was "exhaust[ed]").  Class Members

will also automatically receive an extended warranty without needing to submit a Claim Form. Settlement ¶ III.B.2.

*"The terms of any proposed award of attorneys' fees."*  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."  *Masters*, 473 F.3d at 437.  Here, Class Counsel has agreed to petition the Court for no more than eight-hundred twenty-five thousand dollars ($825,000). Settlement ¶ V.C.  This is a mere 16.8% of the $4.9 million in monetary relief that Class Counsel has made available, which is more than reasonable.  *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).  And this valuation does not account for the significant non-monetary relief Class Counsel has procured, which also must be taken into consideration when determining the overall value of the Settlement as compared to the requested Fee Award.  *Perks*, 2022 WL 1451753, at *2.  By this token, the Settlement provides *more* than $4.9 million in value, and Class Counsel's requested Fee Award is an even *smaller* portion of the Settlement.

Class Counsel's fees are also being paid separately from and in addition to any relief due to Class Members and will therefore not derogate in any way from the relief provided for. Settlement ¶¶ III.C.2, V.A.

*"Any agreement required to be identified by Rule 23(e)(3)."*  This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.  No such agreement exists other than the Settlement.

### 4.      The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.  Here, Class Members are entitled to the same relief, and provided that Valid Claims for refunds and Gift Cards exceed $4.9 million, rewards to Class Members will be reduced *pro rata*.  A *pro rata* distribution has been found by courts in this Circuit to be equitable.  *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably . . . and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at \*5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

## II.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  *In re Payment Card I*, 330 F.R.D. at 50.  Under Fed. R. Civ. P. 23(a), a class action may be maintained if all of the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of Fed. R. Civ. P. 23(b).  Fed. R. Civ. P. 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect

the interests of the class.

Fed. R. Civ. P. 23(a).

As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law

or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."

### A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Class includes up to 82,000 Class Products.

Roberts Decl. ¶ 9.  Numerosity is therefore met.  *Lowe*, 2022 WL 4621433, at *4 ("Numerosity

is presumed at a level of 40 members.") (cleaned up).

#### 2.    Commonality

Commonality is satisfied when the claims depend on a common contention, the

resolution of which will bring a class-wide resolution of the claims.  *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 349–50 (2011).  "Although the claims need not be identical, they must

share common questions of fact or law."  *Lowe*, 2022 WL 4621433, at *4.  Instead, "Rule

23(a)(2) simply requires that there be issues whose resolution will affect all or a significant

number of the putative class members."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137

(2d Cir. 2015) (cleaned up).  "Where the same conduct or practice by the same defendant gives

rise to the same kind of claims from all class members, there is a common question."  *Id.*

(cleaned up)

Here, there are "a range of common questions, including whether there was a [bed frame]

defect; whether [Defendants] knew about the defect; whether the defect was material to

reasonable consumers; whether [Defendants] breached an implied warranty; and the proper measure of damages." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *7 (C.D. Cal. Sept. 23, 2020) (cleaned up).  Further, the Class Products "present a common question of product defect." *Id*.  Accordingly, commonality is satisfied.

### 3.    Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Minor variations in the fact patterns underlying individual claims do not preclude a finding of typicality when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 72 (S.D.N.Y. 2022) (cleaned up).  Here, "[P]laintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories": Defendants' manufacture and sale of defective Class Products. *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014); *see also* SAC ¶¶ 1, 3-11, 17-24.  Accordingly, typicality is satisfied.

### 4.    Adequacy

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Lowe*, 2022 WL 4621433, at *5 (internal quotations omitted).  Here, Plaintiffs—like each and every one of the Settlement Class Members—purchased a Class Product that was defective in that it was prone to collapse (and in fact did collapse). SAC ¶¶ 3-10.  "The fact that [P]laintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

19

Likewise, proposed Class Counsel is more than qualified to represent the Settlement

Class.  "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer

claims … The firm has been appointed class counsel in dozens of cases in both federal and state

courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury

trials since 2008."  *Ebin*, 297 F.R.D. at 566; *see also* Roberts Decl. Ex. 3 (Firm Resume of

Bursor & Fisher, P.A.).  Class Counsel has devoted substantial resources to the prosecution of

this action by investigating Plaintiffs' claims and that of the Class, aggressively pursuing those

claims, defeating a motion to dismiss, conducting informal discovery, participating in a private

mediation with Judge Maas, and ultimately, negotiating a favorable class action settlement.

Roberts Decl. ¶ 10.  In sum, proposed Class Counsel has vigorously prosecuted this action and

will continue to do so throughout its pendency.  *Id.*

### B.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law "predominate over any questions

affecting only individual members and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Both

predominance and superiority are met here.

#### 1.     Predominance

"Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues

must predominate in order to warrant adjudication as a class."  *Philemon*, 2019 WL 13224983, at

*9.  "Predominance is satisfied if resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized

proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotations

omitted).  "Satisfaction of Rule 23(a) [as Plaintiffs have done here] goes a long way toward

satisfying the Rule 23(b)(3) requirement of commonality." *Lowe*, 2022 WL 4621433, at *6
(cleaned up).

Courts have found that predominance is satisfied in product defect cases like this one. *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *13
(S.D.N.Y. May 1, 2008) (predominance satisfied "because members of the class allege the same product defect and unlawful sales practice of Sony"); *see also Kaupelis*, 2020 WL 5901116, at *14. Predominance is therefore met.

### 2.      Superiority

Under Rule 23(b)(3)'s superiority requirement, Plaintiffs must demonstrate that a "class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Philemon*, 2019 WL 13224983, at *9 (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). Fed. R. Civ. P. 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[5]

Here, "a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class [M]ember is otherwise entitled." *Lowe*, 2022 WL 4621433, at *6.  Further, "litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class [M]embers, particularly those who lack the resources to bring their claims individually." *Id*.  Thus, a class action is the most suitable

---

[5] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Hill v. County of Montgomery*, 2020 WL 5531542, at *4 (N.D.N.Y. Sept. 14, 2020) ("Whether the case would be manageable as a class action at trial is not of consequence here in the context of a proposed settlement.").

mechanism to fairly, adequately, and efficiently resolve the Class's claims, while "the individual damages may be too small to make litigation worthwhile."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *14.

## III.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's: (i) work in identifying or investigating the potential claim, (ii) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (iii) knowledge of the applicable law, and (iv) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions and those involving product defects.  Roberts Decl. Ex. 3 (Firm Resume of Bursor & Fisher, P.A.).  And, as a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary and non-monetary relief for the Class Members.  Thus, the Court should appoint Bursor & Fisher, P.A. as Class Counsel.

## IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.    The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

For notice to be satisfactory, the notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  "Class notice need only describe the terms of the settlement generally, which is a minimal requirement."  *George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) (cleaned up).

Here, the Notice provides detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Class Representatives; and (iii) detailed information about the Released Claims.  Settlement Exhibits 3-4.  In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*

In short, the Notice fully informs Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  This information is adequate to put Class Members on notice of the proposed Settlement and is well within the requirements of Fed. R. Civ. P. 23(c)(2)(B).  *George*, 2021 WL 3188314, at *7 (approving substantially similar notice form and collecting cases that have done the same); *Jara*, 2018 WL 11225741, at *4 ("The Proposed Notice is also appropriate because it describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

**B.     The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a notice plan that easily satisfies the requirements of both Fed. R. Civ. P. 23 and Due Process.  Upon Preliminary Approval of the Settlement, the Settlement Administrator will send direct notice to all Class Members by e-mail for whom Defendants have such information—approximately 80% of the Class—and publication notice for all Class Members for whom Defendants do not have contact information.  Settlement ¶¶ IV.A,

C, VII.B.  In addition, the Settlement Administrator will establish a Settlement Website that shall contain all salient Settlement documents, as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶ IV.E.  The Settlement Administrator will also establish a toll-free telephone number for Settlement Class Members to call and receive pre-recorded answers to questions regarding this Settlement, as well as an email address to handle Settlement Class Members' inquiries.  *Id.* ¶ IV.F.  Finally, the Settlement Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id*. ¶ VII.B.  In sum, the proposed methods for providing notice to the Class comports with both Fed. R. Civ. P. 23 and Due Process, and thus, should be approved by the Court.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, attached to the Settlement as Exhibit F, and is submitted herewith.

Dated: January 9, 2023

Respectfully submitted,

By: */s/ Max S. Roberts*
       Max S. Roberts

**BURSOR & FISHER, P.A.**
Max S. Roberts
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com
           jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: jsmith@bursor.com

*Proposed Class Counsel*