**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIO PAYERO and ADAM MALDONADO, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>MATTRESS FIRM, INC. and GLOBAL HOME IMPORTS, INC.,<br><br>       Defendants. | Case No. 7:21-cv-03061-VLB<br><br>Hon. Vincent L. Briccetti |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

Dated: April 14, 2023

**BURSOR & FISHER, P.A.**
Max S. Roberts
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com
   jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: jsmith@bursor.com

*Class Counsel*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION .................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

I.      PLAINTIFFS' ALLEGATIONS ..............................................................................2

II.     THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS...............2

SUMMARY OF THE SETTLEMENT ..............................................................................4

ARGUMENT ......................................................................................................................4

I.      THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE
        REASONABLE AND SHOULD BE APPROVED......................................................4

        A.      The Percentage Method Should Be Used To Calculate Fees ...................5

        B.      The Reasonableness Of The Requested Fees Under the
                Percentage-Of-The-Fund Method Is Supported By This Circuit's
                Six-Factor *Goldberger* Test ...................................................................7

II.     THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER
        A LODESTAR CROSS-CHECK .............................................................................13

III.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE
        INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ......................17

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008).................................................................................... 6

*Asare v. Change Grp. of N.Y., Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)........................................................ 15

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
2002 WL 1315603 (S.D.N.Y. June 17, 2002) .......................................................... 6

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 15, 16

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................ 14

*Cassese v. Williams*,
503 F. App'x 55 (2d Cir. 2012) .............................................................................. 13

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................ 18

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) .............................................................. 11

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).......................................................... 5

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
894 F. Supp. 2d 415 (S.D.N.Y. 2012)...................................................................... 5

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................ 5, 6, 7, 13

*Hyun v. Ippudo USA Holdings*,
2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) .................................................... 6, 16

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................... 5

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)......................................................... 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................... 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ....................................................................... 18

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 9, 11

*In re MetLife Demutalization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................ 11

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................................. 9

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    746 F. App'x. 655 (9th Cir. 2018) ........................................................................................ 16

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
    2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) .................................................................. 9, 10

*LeBlanc-Sternberg v. Fletcher*,
    143 F. 3d 748 (2d Cir. 1998) ................................................................................................. 14

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997) ................................................................................................... 14

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................................................... 12, 17

*Masters v. Wilhelmia Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ............................................................................................ 11, 12

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010) ................................................................................................ 5, 6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................................................... 14

*Mogull v. Pete and Gerry's Organics, LLC*,
    2022 WL 4661454 (S.D.N.Y. Sept. 30, 2022) ..................................................................... 11

*Monzon v. 103W77 Partners, LLC*,
    2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ............................................................................ 5

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................................................... 16

*Parker v. Time Warner Entertainment Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009) ....................................................... 14

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)............................................................................... 14

*Perez v. Rash Curtis & Associates*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............................. 15, 16, 17

*Reyes v. Altamarea Group, LLC*,
    2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ......................................... 17

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................... 8

*Shapiro v. JPMorgan Chase 7 Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................... 9, 12, 14

*Suarez v. California Natural Living, Inc.*,
    2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ........................................... 10

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013) ................................................................ 12

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)........................................................................... 10

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................... 5, 9, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................. 6, 13

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ......................................... 4, 16

*Zink v. First Niagara Bank, N.A.*,
    2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) ...................................... 12

**RULES**

Fed. R. Civ. P. 16 ....................................................................................... 8

Fed. R. Civ. P. 23(f) .................................................................................. 10

Fed. R. Civ. P. 23(h) ............................................................................... 1, 4

Fed. R. Civ. P. 26 ....................................................................................... 3

Fed. R. Civ. P. 26(a) ................................................................................................................. 8

Fed. R. Civ. P. 26(f) ................................................................................................................. 8

## **INTRODUCTION**

Plaintiffs Antonio Payero and Adam Maldonado ("Plaintiffs") purchased Bed Tech-brand bed frames distributed by Defendant Global Home Imports, Inc. ("GHI") and sold by Defendant Mattress Firm, Inc. ("MFI") (collectively with GHI, "Defendants") that collapsed or almost collapsed down the middle due to a design defect.  Second Amended Complaint ("SAC") (ECF No. 31) ¶¶ 1, 3-10.  Prior to the filing of this lawsuit, Plaintiffs' only "remedy" for this defective product under Defendants' "recall" was "the ability to contact the Product manufacturer and request metal clips to strengthen the frame.  No financial compensation was offered." *Id.* ¶ 27.

Now, as a result of Plaintiffs' and Class Counsel's efforts—and with the assistance of the Honorable Frank Maas (Ret.), formerly a magistrate judge in this District and now with JAMS— the parties reached a Class Action Settlement (ECF No. 62-1) (the "Settlement")[1] that institutes a proper recall and adequately compensates Class Members.   The Settlement—preliminarily approved by this Court on January 18, 2023, as amended on January 24, 2023 and February 17, 2023—provides up to $4.9 million in cash value to Class Members for either full refunds of their Class Products, or $125 Bed Tech gift cards.  A two-year extended warranty will also be provided, and no claim submission is necessary to receive this benefit.  The Settlement also provides for the payment of attorneys' fees and expenses, notice and administration costs, and incentive awards, all of which will be paid *separate and apart* from any relief provided to Class Members.

In light of this exceptional result, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees, costs, and expenses of $825,000, as well as incentive awards of $5,000 each to Plaintiff for their service as class representatives. For these reasons, and as explained further below, this Court should approve the requested fees,

---

[1] All capitalized terms used herein shall have the same meaning as defined in the Settlement.

costs, expenses, and incentive awards.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PLAINTIFFS' ALLEGATIONS

Plaintiffs and Class Members are all purchasers of the Class Products.  Plaintiffs allege that the Class Products were defective in that "the bed frame[s] can collapse, posing a crush hazard that can result in severe injury or death."  SAC ¶ 1.  Further, Plaintiffs allege Defendants' recall of the Class Products was insufficient in that it only gave Class Members "the ability to contact the Product manufacturer and request metal clips to strengthen the frame.  No financial compensation was offered."  *Id.* ¶ 27.  As such, Plaintiffs allege they are entitled to a full or partial refund of the purchase price of the Class Products.  *Id.* ¶ 1.  Plaintiffs bring claims for GBL §§ 349-350, breach of implied warranty, and violation of the Magnuson-Moss Warranty Act.  *Id.* ¶ 2.  Defendants deny any and all wrongdoing, deny that Plaintiffs can support their claims, and believe their recall was sufficient to alleviate any issues with the Class Products.

### II.    THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS

On April 8, 2021, Plaintiff Payero filed a putative class action against MFI for violations of GBL §§ 349 and 350, fraud, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment (ECF No. 1).  On June 9, 2021, Plaintiffs filed a First Amended Complaint, adding Plaintiff Maldonado (ECF No. 14).

On June 30, 2021, MFI filed a Motion to Dismiss the First Amended Complaint (ECF No. 16).  Briefing on the motion was completed on August 4, 2021 (ECF Nos. 20-23).  On January 7, 2022, the Court granted in part and denied in part the motion to dismiss (ECF No. 24).  Specifically, the Court denied the motion as to Plaintiffs' claims for violations of GBL §§ 349 and 350, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act, and granted the motion as to Plaintiffs' claims for fraud and unjust enrichment.  *Id.*

On January 21, 2022, Plaintiffs and MFI filed a [Proposed] Case Management Plan (ECF No. 27), which the Court approved at the Initial Case Management Conference on January 28, 2022 (ECF No. 29).  On February 1, 2021, Plaintiffs filed their Second Amended Complaint, adding GHI as a defendant (ECF No. 31).  On February 23, 2022, MFI filed its answer to the SAC (ECF No. 39).  On March 1, 2022, GHI filed its answer to the SAC (ECF No. 41).

Since the resolution of the Motion to Dismiss of the case the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Declaration of Max S. Roberts ("Roberts Decl.") ¶ 22.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before the Honorable Frank Maas (ret.).  *Id.* ¶ 23.  In preparation for the mediation, the Parties exchanged informal discovery, including the total sales of the Class Products and relevant insurance information.  *Id.* ¶¶ 24-25.  The parties also submitted lengthy, detailed mediation statements, airing their respective legal arguments and theories on potential damages.  *Id.*

The mediation took place on May 11, 2022 and lasted the entire day.  *Id.* ¶ 26.  While the Parties did not reach a settlement at conclusion of the mediation, the Parties continued to negotiate over the next several months with the assistance of Judge Maas.  *Id.*  In October 2022, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet.  *Id.* ¶ 27.  There was no discussion of attorney's fees or incentive awards until the parties first reached agreement on the material terms of the class settlement.  *Id.*  In the weeks following, the Parties negotiated and finalized the full-form Settlement Agreement (ECF No. 62-1).  *Id.* ¶ 27.  On January 18, 2023, the Court granted preliminary approval of the Settlement.  *Id.* ¶ 32 (citing ECF No. 63).  The Court issued amended Orders Granting Preliminary Approval on January 24, 2023 and February 17, 2023 to fix a typographical error and to adjust upcoming deadlines to allow for

additional time for notice.  *Id.* (citing ECF Nos. 65, 70).  During and since that time, Class Counsel

has worked with the Settlement Administrator to administer the Notice Plan.  *Id.* ¶¶ 38-39.

<u>SUMMARY OF THE SETTLEMENT</u>

Class Counsel's efforts resulted in an outstanding settlement.  The Settlement provides that

Defendants shall pay up to $4.9 million in either full refunds for the Class Products (for Class

Members who elect to return their Class Products), or $125 Bed Tech gift cards (for Class

Members who elect to keep their Class Products).  Settlement ¶¶ III.C.1-2.  Class Members who

keep their Class Product will also automatically receive an extended warranty for an additional

two years beyond the standard warranty or two additional years from the date of the Effective

Date, whichever is later.  *Id.* ¶ III.B.2.  Any attorneys' fees and costs, incentive awards, and notice

and administration costs shall be paid separately from the monetary value of all cash awards paid

to Class Members.  *Id.* ¶ V.A.

<u>ARGUMENT</u>

**I.   THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED**

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's

fees and nontaxable costs that are authorized by law or the parties' agreement."  Fed. R. Civ. P.

23(h).[2]  Here, Plaintiffs request a fee award not to exceed $825,000, which represents *at most*

---

[2] The requested fee award also encompasses unreimbursed litigation expenses.  Settlement
¶ V.C.  Reasonable litigation-related expenses are customarily awarded in class action settlements
and include costs such as document preparation and travel.  *See*, *e.g.*, *Yuzary v. HSBC Bank USA,
N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's unreimbursed
expenses, including court and process server fees, postage and courier fees, transportation,
working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the
mediator's fees, are reasonable and were incidental and necessary to the representation of the
class.").  Thus, included in the requested fee award, Class Counsel respectfully seeks
reimbursement of $8,318.69 for out-of-pocket expenses in these standard categories.  *See* Roberts
Decl. ¶ 44; *id.* Ex. 2.

16.8% of the value of the Settlement.  Settlement ¶ V.C; Roberts Decl. ¶ 29.  This percentage does not take into account the value of the automatic two-year extended warranty provided to class members who keep their bedframes.  *Id.* ¶ 30; *see also Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief considered in calculating value of settlement); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (same).  This is well below the one-third benchmark used in this Circuit under the percentage-of-the-recovery method—which the Court should employ—and should be approved as such.  Alternatively, the requested Attorneys' Fees and Expenses award is reasonable under the lodestar method.

## A.     The Percentage Method Should Be Used To Calculate Fees

Courts in the Second Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method … as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources."  *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015).   "In fact, the 'trend' of using the percentage of the fund method to compensate plaintiffs' counsel … is now "firmly entrenched in the jurisprudence of this Circuit."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013); *see also GB ex rel NB*

*v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (noting "courts in

the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees" in fee-

shifting cases) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,

522 F.3d 182 (2d Cir. 2008)).

As the Second Circuit has stated, the percentage method "directly aligns the interests of

the class and its counsel and provides a powerful incentive for the efficient prosecution and early

resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.

2005). "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements,

tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed

review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,

2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). Indeed, over a decade ago, the Second Circuit

described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the lodestar method
> proved vexing. Our district courts found it created a temptation for lawyers to run
> up the number of hours for which they could be paid. For the same reason, the
> lodestar created an unanticipated disincentive to early settlements. But the primary
> source of dissatisfaction was that it resurrected the ghost of Ebenezer Scrooge,
> compelling district courts to engage in a gimlet-eyed review of line-item fee audits.
> There was an inevitable waste of judicial resources.

*Goldberger*, 209 F.3d at 48-49; *see also Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3

(S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and

before any depositions occurred … the Court finds that the percentage method, which avoids the

lodestar method's potential to 'creative a disincentive to early settlement' … is appropriate.")

(citing *McDaniel*, 595 F.3d at 418); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007

WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage

method is the most efficient means of compensating the work of class action attorneys. It does not

waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").

Under the circumstances of this case—wherein Class Counsel received an exceptional result for the Settlement Class—the Court should employ the percentage-of-the-recovery method.

**B.    The Reasonableness Of The Requested Fees Under the Percentage-Of-The-Fund Method Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation []; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.   A review of these factors supports Class Counsel's fee request.

**1.    Time And Labor Expended By Counsel**

Since Class Counsel began investigating this matter in March 2021, Counsel has devoted 431.8 hours to the successful pursuit of this matter.   Roberts Decl. ¶ 41.   Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources has brought this complex litigation to a successful resolution.

Class Counsel's work included, *inter alia*:

i.    conducting an extensive, pre-suit factual investigation of Defendant's recall of the Class Products, involving an investigation of the issues with both the Class Products and the recall itself;

ii.    interviewing numerous interested Class Members, including Plaintiffs, regarding their purchase of and experience with the Class Products;

iii.    drafting the initial Complaint, First Amended Complaint, and Second Amended Complaint;

iv.     briefing and largely prevailing on Defendant MFI's Motion to Dismiss;

v.     meeting and conferring with defense counsel regarding discovery and a case management schedule, and drafting a Fed. R. Civ. P. 26(f) report;

vi.     attending a Fed. R. Civ. P. 16 conference;

vii.     drafting Plaintiffs' initial disclosures pursuant to Fed. R. Civ. P. 26(a), reviewing Defendants' initial disclosures, and conducting discovery;

viii.     holding numerous telephonic calls with defense counsel regarding settlement;

ix.     drafting a mediation statement, participating in a full-day mediation with the Honorable Frank Maas (Ret.) of JAMS on May 11, 2022, and continuing to discuss settlement over the next several months with the assistance of Judge Maas;

x.     successfully moving for Preliminary Approval of the Settlement; and

xi.     communicating with the Claims Administrator regarding implementation of the Notice Plan and sorting out issues with the class data.

*See* Roberts Decl. ¶¶ 2-27, 31-32, 38-39.

Further, Class Counsel's work in this litigation is far from over. On the contrary, Class Counsel will commit significant ongoing time and resources to this litigation, specifically related to administering the Settlement and responding to class member inquiries concerning the claims process. Robert Decl. ¶ 42. Based on Class Counsel's experience in other cases, this ongoing work will likely involve approximately 50-75 total additional hours, though in our experience that number tends to skew higher in cases involving dangerous product defects or higher-priced products, as is the case here. *Id*. This additional work should be accounted for as well. *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims."). Thus, this factor favors the fee request.

### 2.      Magnitude And Complexity Of The Litigation

The complex nature of this litigation further favors the requested fee award.  "[C]lass actions have a well deserved reputation as being most complex."  *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (cleaned up); *see also Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("It is well settled that class actions are notoriously complex and difficult to litigate.") (cleaned up).  Indeed, as Judge McMahon has observed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."  *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).

The complexity of this case is further underscored by the challenges Plaintiffs faced on a motion to dismiss, and even more so at the summary judgment and class certification stages.  *See* Argument § I.B.3, *infra*.  Class Counsel can attest to these complexities personally, having litigated a substantially similar case involving a recall of a defective product.  *See generally Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020).  While the court in that case ultimately granted class certification, it did so on narrower grounds than those the plaintiffs moved for.  *Id.*  This factor favors the requested fee.

### 3.      The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that

risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).

Here, this case presented a substantial risk of non-payment for Class Counsel.  For over two years, Class Counsel invested significant time, effort, and resources to the litigation without any compensation.  Roberts Decl. ¶¶ 34-36.  Specifically, Class Counsel had to overcome a motion to dismiss, which eliminated two of Plaintiffs' claims (fraudulent omission and unjust enrichment). At class certification, in addition to the usual hurdles and complexities encountered at that stage, Class Counsel would have to contend with other issues, including (i) whether absent Class Members whose Class Products did not collapse have standing, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021); (ii) whether a nationwide breach of implied warranty class could be certified, *see Kaupelis*, 2020 WL 5901116, at *13-15; and (iii) whether this Court has personal jurisdiction over the claims of non-New York class members, *Suarez v. California Natural Living, Inc.*, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) (Briccetti, J.) ("The Court concludes personal jurisdiction over plaintiff's out-of-state claims is best assessed at the class certification stage, not on the instant motion to dismiss.").  *See also* Roberts Decl. ¶ 36.  Defendants' success on any one of those issues could have precluded many if not most Class Members from recovering anything.  *Id*.  Further, even if Plaintiffs succeeded at class certification, Defendants would be entitled to appeal the Court's order pursuant to Fed. R. Civ. P. 23(f).  *Id*.  And, even success at class certification would not preclude a victory for Defendants on the merits at summary judgment, at trial, or on appeal.  *Id*.  The fact Class Counsel undertook this representation, despite these significant risks, supports the requested fee award.

### 4.      The Quality Of Representation

Class action litigation presents unique challenges and, by achieving an exceptional settlement, Class Counsel proved that they have the ability and resources to litigate this case

zealously and effectively.  Class Counsel has been recognized by courts across the country for its expertise, including this Court.  *See* Roberts Decl. Ex. 13 (Firm Resume); *see also Mogull v. Pete and Gerry's Organics, LLC*, 2022 WL 4661454, at *2 (S.D.N.Y. Sept. 30, 2022) (Briccetti, J.) ("Bursor & Fisher … has represented other plaintiffs in more than one hundred class action lawsuits, including several consumer class actions that proceeded to jury trials in which Bursor & Fisher achieved favorable results for the plaintiffs."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008.").

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance."  *In re MetLife Demutalization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).  Class Counsel achieved an exceptional result in this case while facing well-resourced and highly experienced defense counsel.  *See In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly.  The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 5.    The Requested Fee In Relation To The Settlement

Class Counsel seeks attorneys' fees and expenses of $825,000.  Settlement ¶ V.C.  "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."  *Velez*, 2010 WL 4877852, at *21.  Further, under Second Circuit precedent, Class Counsel's fees must be measured against the relief *made available* to Class Members, not the relief actually claimed. *Masters v. Wilhelmia Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("An allocation of

11

fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").  This applies to both common fund settlement and claims made settlements.  *See*, *e.g.*, *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available' … *i.e.*, as if it were a common settlement fund" (quoting *Masters*, 473 F.3d at 437)); *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *7-8 (W.D.N.Y. Dec. 29, 2016) (finding "the weight of authority" holds that attorneys' fees should be based on the amount made available, not the amount actually claimed).

Here, the requested Attorneys' Fees and Expenses ($825,000) represent 16.8% of the cash value of the Settlement ($4.9 million), well below the Second Circuit's benchmark for fees. Roberts Decl. ¶ 29.  And, this percentage does not take into account the value of the automatic two-year extended warranty provided to class members who keep their bedframes provided for under the Settlement.  *Id.* ¶ 30.  Further, the Settlement specifically provides that the Attorneys' Fees and Expenses are to be paid "separate and apart from any relief provided to the Class" (Settlement ¶ V.A), meaning the Attorneys' Fees and Expenses will not diminish the relief to Class Members under the Settlement in any way.  This factor thus supports the requested fee award.

### 6.    Public Policy Considerations

The final *Goldberger* factor is public policy.  "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct.  *See id.*  "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v.*

*MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).  Thus, society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumer rights, particularly where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons.

Here, public policy considerations also favor Class Counsel's fee request.  As the Court noted at the January 28, 2022, hearing denying MFI's Motion to Dismiss, "the word 'recall' [didn't] seem to quite fit" Defendants' conduct prior to this litigation. 1/28/2022 Hearing Transcript at 25:6 (ECF No. 62-2).  Now, as a result of the Settlement achieved by Class Counsel, Defendants have instituted a proper recall whereby Defendants will "giv[e] you your money back if you bring in the bed frame," in addition to the option for Bed Tech gift cards and an extended warranty covering any issues with the Class Products should Class Members elect to keep their bed frames.  *Id.* at 25:2-3.  Accordingly, Class Counsel's work has secured a substantial benefit for the Class, and public policy therefore favors this fee request.

## II.   THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK

A lodestar cross-check further supports the requested fee.  Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See Wal–Mart Stores, Inc.*, 396 F.3d at 121.  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied

by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors.  *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("[U]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (cleaned up).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate."  *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted).  Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market.  *See* Roberts Decl. ¶¶ 46-49.[3]

The hours worked, lodestar, and expenses for Class Counsel are set forth in the Roberts Declaration, submitted herewith.  These records confirm Class Counsel's efficient billing, by, for example, striving to assign as much work as possible to more junior lawyers or paralegals who bill

---

[3]  The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

at lower hourly rates in order to minimize the fees for the Class.  *See* Roberts Decl. Ex. 1.  Indeed, as these billing records indicate, nearly 70% of the time billed to this matter was by third- and fourth-year associates.  *Id*.

Thus, even under the optional lodestar cross check, Class Counsel's requested fees are reasonable given the unique circumstances of this case.  Specifically:

- Class Counsel obtained an excellent Settlement, which will result in class members receiving a substantial amount of money quickly and automatically, without the need to submit a claim.

- The litigation was conducted and the Settlement was obtained in an efficient manner, by experienced and qualified counsel.

- The case involved complex legal issues and factual theories, which involved significant litigation risks (*see* Argument § I.B.3, *supra*).

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

In total, through April 14, 2023, Class County has devoted 431.8 hours to prosecuting this litigation.  *See* Roberts Decl. ¶ 41.  Class Counsel's aggregate lodestar is $215,640, with a blended hourly rate of $499.40.  *Id.*; *see also Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (concluding Bursor & Fisher's "blended rate of $634.48 is within the reasonable range of rates").  Therefore, the requested fee award represents a multiplier of approximately 3.83, which is well within the accepted range in this Circuit.  *See Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *In re Columbia University Tuition Refund Action*, Case No. 20-cv-03208-JMF, ECF No. 115 at ¶ 10 (S.D.N.Y. Mar. 29, 2022) (approving attorneys' fees of one-third of $12.5 million common fund, representing 4.3 times multiplier on Class Counsel's regular hourly rates); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (approving attorneys' fees of 33% of a $4.9 million common fund, representing a 6.3 times multiplier on Class

Counsel's regular hourly rates); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6").

Moreover, as courts in New York and elsewhere have noted, a high multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun*, 2016 WL 1222347, at *3 ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate."); *see also Perez*, 2020 WL 1904533, at *21 ("The benefit obtained for the class is an extraordinary result, while there was and still is significant risk of nonpayment for class counsel.  Moreover, the general quality of the representation and the complexity and novelty of the issues presented weigh in favor of a higher lodestar multiplier.").

Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. *See* Roberts Decl. ¶ 42.  "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).  Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x. 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class

counsel would, among other things, defend against appeals and assist in implementing the settlement."); *Perez*, 2020 WL 1904533, at *19-20 (concluding that expected future hours should be counted towards lodestar cross-check and applying same).  Specifically, as noted above, Class Counsel expects to bill another 50-75 hours on this matter.  Roberts Decl. ¶ 42.  At Class Counsel's blended hourly rate, this would push Class Counsel's lodestar to between $240,610-$253,095.  *Id*. This higher lodestar would reduce Class Counsel's requested multiplier to between 3.26-3.43.

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case.  Class Counsel should be rewarded for achieving this result.

## III.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes*, 2011 WL 4599822, at *9.  Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of Plaintiffs was critical to the ultimate success of the case. *See* Roberts Decl. ¶¶ 54-56.  Plaintiffs spent significant time protecting the interests of the class through their involvement in this case. *Id*.  Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file the Complaint, First Amended Complaint, and Second Amended Complaint. *Id*. ¶ 55.  During the course of this litigation, Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy and settlement. *Id.*

On these facts, the $5,000 incentive payments to each Plaintiff—which are being paid "separate and apart from any relief provided to the Class," Settlement ¶ V.A—are appropriate in

light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class members.  Further, the incentive awards are reasonable and equivalent to awards approved by other courts in this Circuit, and. *See*, *e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving incentive awards of $25,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of $825,000; (2) grant each Plaintiff an incentive award of $5,000 in recognition of their efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: April 14, 2023              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
       Max S. Roberts

Max S. Roberts
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
       jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

Email: jsmith@bursor.com

*Class Counsel*