**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIO PAYERO and ADAM MALDONADO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>    v.<br><br>MATTRESS FIRM, INC. and GLOBAL HOME IMPORTS, INC.,<br><br>                              Defendants. | Case No. 7:21-cv-03061-VB<br><br>Hon. Vincent L. Briccetti |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: June 12, 2023

**BURSOR & FISHER, P.A.**
Max S. Roberts
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com
            jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: jsmith@bursor.com

*Class Counsel*

## **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ....................................................................................................1

THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS....................................2

TERMS OF THE SETTLEMENT ..............................................................................4

    I.      CLASS DEFINITION ...................................................................4

    II.     MONETARY RELIEF ..................................................................4

    III.    NON-MONETARY RELIEF ..........................................................5

    IV.   RELEASE ................................................................................5

    V.     NOTICE AND ADMINISTRATION EXPENSES...............................6

    VI.    INCENTIVE AWARDS ................................................................6

    VII.   ATTORNEYS' FEES AND EXPENSES..............................................6

ARGUMENT .........................................................................................................7

    I.      FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.....................7

          A.    The *Grinnell* Factors ...................................................9

               1.     Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).........................9

               2.     The Reaction Of The Class (*Grinnell* Factor 2)..............................10

               3.     Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ...................................................11

               4.     Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6) .........11

               5.     Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) .......................................................12

               6.     The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)..............................................12

i

B.    The Rule 23(e)(2) Factors ........................................................14

    1.    The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A) ................14

    2.    The Settlement Was Negotiated At Arm's Length .......................14

    3.    The Settlement Provides Adequate Relief To The Class .............15

    4.    The Settlement Treats All Class Members Equally .....................17

II.    CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...................17

    A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a) ................................................................................18

    1.    Numerosity ................................................................................18

    2.    Commonality ..............................................................................18

    3.    Typicality ..................................................................................19

    4.    Adequacy ..................................................................................19

    B.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) ..............................................................................20

    1.    Predominance ............................................................................20

    2.    Superiority ................................................................................21

III.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS ..........................................22

CONCLUSION ................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................ 21

*Beckman v. KeyBank*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 11, 12

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .......................................................................................... 21

*Buffington v. Progressive Advanced Ins. Co.*,
  342 F.R.D. 66 (S.D.N.Y. 2022) ..................................................................................... 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................................... passim

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................... 20

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................... 19, 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ....................................................................................................... 22

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................................................. 13

*Flores v. CGI Inc.*,
  2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ............................................................ 12

*Foos v. Ann, Inc.*,
  2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ............................................................. 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................................... 13

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
  328 F.R.D. 35 (W.D.N.Y. 2018) .................................................................................... 10

*Gordon v. Vanda Pharmaceuticals Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ............................................................. 17

*Hernandez v. Uzzal Pizzeria, Inc.*,
   2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022) ........................................................... 16

*Hill v. County of Montgomery*,
   2020 WL 5531542 (N.D.N.Y. Sept. 14, 2020) ....................................................... 21

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
   271 F. App'x 41 (2d Cir. 2008) ............................................................................. 23

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................. 14, 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 22

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................... 10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................. 13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................. 14, 15, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ......................................................... 8

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..................................................... 21, 22

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................ 10

*Jara v. Felidia Restaurant, Inc.*,
   2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) .................................................. 7, 15

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) .................................................................................. 19

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................. 8

*Kaupelis v. Harbor Freight Tools USA Inc.*,
   2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) ........................................................ 15

iv

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ................................................. 19, 21

*Lowe v. NBT Bank, N.A.*,
   2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022)................................................. passim

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012) ................................................................. 11

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ........................................................................ 13, 16

*McLaughlin v. IDT Energy*,
   2018 WL 3642627 (E.D.N.Y. July 30, 2018)................................................... 9

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................. 17

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ............................................. 9, 11

*Peoples v. Annucci*,
   180 F. Supp. 3d 294 (S.D.N.Y. 2016) ............................................................ 7

*Perks v. TD Bank, N.A.*,
   2022 WL 1451753 (S.D.N.Y. May 9, 2022) .................................................. 14, 16

*Philemon v. Aries Capital Partners, Inc.*,
   2019 WL 13224983 (E.D.N.Y. July 1, 2019).......................................... 12, 13, 20, 21

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ........................................................................ 21

*Shames v. Hertz Corp.*,
   2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)................................................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ................................................................ 9

*Times v. Target Corp.*,
   2019 WL 5616867 (S.D.N.Y. 2019) ............................................................. 8

*Trinidad v. Pret a Manger (UDS) Ltd.*,
   2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ............................................... 16

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ................................................................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005) .................................................................. 7, 22

*Weigner v. City of N.Y.,*
  852 F.2d 646 (2d Cir. 1988) ..................................................................... 23

**STATUTES**

28 U.S.C. § 1712 ......................................................................................... 13

**RULES**

Fed. R. Civ. P. 23 ................................................................................. passim

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ............................................... 7

Plaintiffs Antonio Payero and Adam Maldonado ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement.  The Settlement Agreement ("Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of Max S. Roberts ("Roberts Decl.").

## INTRODUCTION

At the January 28, 2022 hearing denying Mattress Firm's Motion to Dismiss, the Court made the following remarks:

> You know, the word "recall," I know that there's a lot of argument between you folks about the word "recall," it doesn't feel exactly like a recall.  I mean, I think I know what a recall is because I get these notices all the time. You know, for my car, you gotta bring it in and replace the x, y, z widget and such-and-such valve whatever, *bring it on in and we'll do it for free. That sounds like a recall.*  That's not really what happened here. What happened was, you know, *it didn't say anything about giving you your money back if you bring in the bed frame* or bring it in and we'll fix it for you, it says, yeah, contact the manufacturer and they'll send you some clips that you can -- if you're handy, you can fix it yourself, so, I don't know, the word "recall" doesn't seem to quite fit that, but I'm not sure that it really matters one way or the other.

1/28/2022 Hearing Transcript, at 24:19-25:7 (Exhibit 2 to the Roberts Decl.) (emphasis added).

After over two years of litigation and extended settlement discussions with the assistance of a neutral mediator, the Honorable Frank Maas (Ret.) of JAMS, the Parties request final approval of a Settlement that tracks what the Court had in mind.  If Class Members choose to bring their Class Product into any of Mattress Firm's nearly 2,400 stores[2] within two years of the Effective Date, they will receive a full refund of the purchase price of their Class Product.  Settlement ¶ III.C.1.ii.  Even if Class Members received the Class Product for free—such as if the Class Product was included with the purchase of a mattress—those Class Members will still

---

[1] All capitalized terms not otherwise defined herein have the same definitions as set out in the settlement agreement.  *See* Roberts Decl., Ex. 1.

[2] https://www.scrapehero.com/location-reports/Mattress%20Firm-USA/.

be eligible for financial compensation of up to $115, depending on the size of the Class Product. *Id*. Class Members who choose to keep their Class Product may file a claim to receive a Bed Tech gift card of $125. *Id.* ¶ III.C.1.i.  Both the refund option and the gift card option are subject to a cap of $4.9 million, *exclusive* of attorneys' fees and costs, incentive awards, and notice and administration costs. *Id.* ¶ III.C.2. And all Class Members will *automatically* receive an extended warranty from the later of two years from the end of the standard warranty or two years from the Effective Date *without the need to submit a Claim Form*, ensuring that these Class Members will be protected if their Class Product collapses within the extended warranty period after the Settlement is administered. *Id.* ¶ III.B.2.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

On April 8, 2021, Plaintiff Payero filed a putative class action against Defendant Mattress Firm, Inc. ("MFI") for violations of GBL §§ 349 and 350, fraud, breach of implied warranty, violation of the Magnuson-Moss Warranty Act, and unjust enrichment, alleging that MFI sold Bed Tech-brand HR Platform bed frames that were made with a defective frame, causing the bed frame to often collapse, posing a crush hazard that can result in serious injury or death. Roberts Decl. ¶ 7.  Plaintiff Payero also alleged MFI's recall remedy of sending metal clips to consumers was insufficient.  ECF No. 1.  On June 6, 2021, Plaintiffs filed a First Amended Complaint, adding Plaintiff Maldonado. *Id.* ¶ 10.

On June 30, 2021, MFI filed a Motion to Dismiss the First Amended Complaint.  Roberts Decl. ¶ 11.  Briefing on the motion was completed on August 4, 2021. *Id.* ¶¶ 12-15.  On January 7, 2022, the Court granted in part and denied in part the motion to dismiss. *Id.* ¶ 16. Specifically, the Court denied the motion as to Plaintiffs' claims for violations of GBL §§ 349

and 350, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act, and granted the motion as to Plaintiffs' claims for fraud and unjust enrichment. *Id.* In the same order, the Court issued a notice of an initial status conference to take place on January 28, 2022. *Id.* ¶ 17.

On January 13, 2022, in preparation for the status conference, Plaintiffs and MFI held a Fed. R. Civ. P. 26(f) conference. Roberts Decl. ¶ 18. During the 26(f) conference, the Parties discussed their interest in settlement. *Id.* ¶¶ 18, 25. On January 28, 2022, at the initial status conference, the Parties informed the Court of these settlement discussions. *Id.* ¶ 20; *see also id.* Ex. 2, 1/28/2022 Hearing Transcript at 21:20-22:7. The Parties also informed the Court that Plaintiffs intended to amend their complaint to add Defendant Global Home Imports, Inc. ("GHI"), who was the manufacturer and distributor of the Class Products. On February 1, 2021, Plaintiffs filed their Second Amended Complaint, adding GHI as a defendant. *Id.* ¶ 21. On February 23, 2022, MFI filed its answer to the SAC. *Id.* ¶ 22. On March 1, 2022, GHI filed its answer to the SAC. *Id.* ¶ 23.

On May 11, 2022, the Parties attended a full-day mediation with the Hon. Frank Maas (Ret.) of JAMS. Roberts Decl. ¶ 29. In advance of the mediation, the Parties exchanged information relevant to their claims and defenses, including (i) the number of Class Products sold to consumers that had been recalled, (ii) the number of consumers who requested metal clips pursuant to Defendants' recall, (iii) the average price of the Class Products, and (iv) any insurance available to either Defendant. *Id.* ¶ 27. This is largely the same information that would have been produced had the case proceeded to formal discovery. *Id.* ¶ 28. Accordingly, the Parties were sufficiently informed at the time of the mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement. *Id.*

While the Parties did not completely resolve the matter at the mediation, the Parties continued to negotiate a settlement in good faith and with the assistance of Judge Maas for several months after the mediation.  *Id*. ¶ 29.  In October 2022, the Parties came to an agreement on all material terms and began drafting a full settlement agreement.  *Id.* ¶ 30.

On January 9, 2023, Plaintiffs moved for preliminary approval of the settlement agreement, which was fully executed on the same day.  *Id.* ¶¶ 30, 32.  On January 18, 2023, the Court granted preliminary approval of the settlement.  *Id.* ¶ 33.  At the Parties request, this order was modified on January 23, 2023, and February 17, 2023, to amend certain dates in the Court's order.  *Id*.

## <u>TERMS OF THE SETTLEMENT</u>

### I.    CLASS DEFINITION

The "Class" or "Class Members" are defined as all residents of the United States who purchased a Bed Tech-brand HR Platform bed frame bearing the Model Nos.  HR33, HR33XL, HR46, HR50, HR60, or HR66.[3]  Settlement ¶ I.G.  The "Class Period" extends from April 8, 2015 through April 8, 2021.  *Id.* ¶ I.K.

### II.    MONETARY RELIEF

Class Members who return their Class Product to a Mattress Firm store within two years of the Effective Date shall receive a full refund from MFI of the amount that the Class Member paid for the Class Product (including tax and delivery charges as applicable).  Settlement ¶ III.C.1.ii.  For Class Members who received their Class Product for free (*e.g.*, if it was included for free along with the purchase of a mattress), those Class Members may return their Class

---

[3] Excluded from the Class are: (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; and (c) all persons who timely submit Request for Exclusion from the Class.

Product to a Mattress Firm store within two years of the Effective Date for a cash refund of up to $115, depending on the size of the Class Product.  *Id.* (listing refund schedule for Class Products).  Class Members who do not wish to return their Class Product will receive a $125 Bed Tech gift card from GHI.  *Id.* ¶ III.C.1.i.

To receive either a refund or a Gift Card, Class Members must submit a Claim Form along with a Proof of Purchase.  Settlement ¶ VII.F.  Refunds and Gift Cards shall be capped at $4.9 million, exclusive of Settlement Administration Costs, any Fee Award and incentive awards, and any other costs, expenses, and fees associated with the Settlement.  *Id.* ¶¶ III.C.2, V.A.  If the total value of all Valid Claims exceeds $4.9 million, then the amounts of the Gift Card payments and refunds will be reduced *pro rata* as necessary.  *Id.* ¶ III.C.2.

## III.    NON-MONETARY RELIEF

All Class Members will automatically receive an extended warranty of the later of two years from the end of the Class Member's standard warranty or two years from the Effective Date.  Settlement ¶ III.A.2.  Class Members are not required to fill out a Claim Form to receive the extended warranty.

## IV.    RELEASE

In exchange for the relief described above, Defendants, each of their related affiliated entities, as well as all "Released Parties" as defined in Settlement ¶ I.CC, will receive a full release of all claims that in any way relate to the propensity for the Class Products to collapse. *See* Settlement ¶¶ I.BB-DD, VI.A-D (full releasing language).  The Release does not include claims for personal injuries and property damage (other than damage to the Class Product).  *Id.* ¶ I.BB.

## V.     NOTICE AND ADMINISTRATION EXPENSES

Defendants shall pay all Settlement Administration Expenses in accordance with the schedule set forth in the Settlement Agreement.  Settlement ¶ IV.G.  Settlement Administration Expenses shall be paid in addition to, and separate from, any awards paid to Class Members, and shall not derogate in any way from any relief due to the Class.  *Id.* ¶ III.C.2.

## VI.    INCENTIVE AWARDS

In recognition for their efforts on behalf of the Class, Defendants have agreed that Plaintiffs may receive, subject to Court approval, incentive awards of $5,000 each as appropriate compensation for their time and effort serving as Class Representatives and as parties to the Litigation.  Settlement ¶ V.B.  Any incentive awards shall be paid by Defendants in addition to, and separate from, any awards paid to Class Members, and shall not reduce any relief due to the Class.  *Id.* ¶¶ III.C.2, V.A.  Plaintiffs' request for incentive awards should be granted for the reasons set forth in the Motion for Attorneys' Fees, Costs, and Expenses, and Incentive Awards (ECF Nos. 71-72).

## VII.   ATTORNEYS' FEES AND EXPENSES

Subject to approval by the Court, Class Counsel has petitioned, and Defendants will pay, attorneys' fees, costs, and expenses of eight-hundred twenty-five thousand dollars and zero cents ($825,000).  Settlement ¶ V.C; ECF No. 71.  Any attorneys' fees, costs, and expenses shall be paid by Defendants in addition to, and separate from, any awards paid to Class Members, and shall not reduce any relief due to the Class.  Settlement ¶¶ III.C.2, V.A.  Class Counsel's request for attorneys' fees, costs, and expenses should be granted for the reasons set forth in the Motion for Attorneys' Fees, Costs, and Expenses, and Incentive Awards (ECF Nos. 71-72).

## ARGUMENT

### I.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "All people in the United States (including in its states, districts, territories, or tribal reservations) who purchased an HR Platform bed frame sold under the Bed Tech brand name ("Class Product") during the Class Period." ECF No. 70 ¶ 3 (the "Settlement Class"). No substantive changes have occurred since that ruling, and more importantly, no objections have challenged that conclusion. The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate in connection with final approval.

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa U.S.A.*") (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "Courts have discretion regarding the approval of a proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Id*. "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the

reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4)

the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining the class action through the trial; (7) the ability of the defendants to withstand a

greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil

Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors."  *Johnson v. Rausch, Sturm,*

*Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors

are whether:  (A) the class representatives and class counsel have adequately represented the

class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ.

P. 23(e)(2).  "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which

complement, rather than displace each other."  *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re*

*Payment Card II*").

The Court should now grant final certification because the Settlement Class meets all of

the requirements of Rule 23(a) and Rule 23(b)(3).  *See Times v. Target Corp.*, 2019 WL

5616867, *1-2 (S.D.N.Y. 2019) (granting plaintiffs' motion for class certification because these

requirements are met).  Indeed, in granting preliminary approval this Court already determined

that class certification for settlement purposes is warranted.  *See* ECF No. 70 ¶ 3.

A.     The *Grinnell* Factors

1.     Litigation Through Trial Would Be Complex, Costly, And
       Long (*Grinnell* Factor 1)

"[C]lass action suits readily lend themselves to compromise because of the difficulties of

proof, the uncertainties of the outcome, and the typical length of the litigation."  *Pearlstein v.*

*BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022).  As such, courts have

consistently held that unless the proposed settlement is clearly inadequate, its acceptance and

approval are preferable to the continuation of lengthy and expensive litigation with uncertain

results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981),

*aff'd,* 675 F.2d 456 (2d Cir. 1982).

As discussed above, Plaintiffs largely prevailed on MFI's Motion to Dismiss, and the

Parties have engaged in informal discovery that involved largely the same information that

would have been produced in formal discovery related to issues of class certification and

summary judgment.  Roberts Decl. ¶¶ 16-24.  The next steps in the litigation would presumably

have been depositions of the Parties, substantial electronically stored information discovery, and

contested motions for summary judgment and class certification, which would be costly and

time-consuming for the Parties and the Court and create a risk that a litigation class would not be

certified and/or that the Class would recover nothing at all.  *McLaughlin v. IDT Energy*, 2018

WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor weighed in favor

of settlement approval where "the parties would likely need to brief motions for class

certification, summary judgment, and potentially proceed to trial").  Thus, while Plaintiffs are

confident in the merits of this case, there is no guarantee that they would be successful.  Roberts

Decl. ¶¶ 35-37.  Moreover, "[e]ven assuming that plaintiffs were successful in defeating any

pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (internal quotations omitted).

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. Roberts Decl. ¶ 38. It includes up to $4.9 million in value to Class Members in the form of full refunds and gift cards, and that does not include the additional value added by an extended warranty to protect Class Members from future damage to their Class Products. Settlement ¶ III. This *Grinnell* factor weighs in favor of preliminary approval.

## 2. The Reaction Of The Class (*Grinnell* Factor 2)

Under the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 70 ¶¶ 7-9), and the Settlement Administrator directly reached 84% of the Settlement Class. *See* Roberts Decl. ¶ 40; Declaration of Teresa Y. Sutor ("Sutor Decl.") ¶¶ 4-10. *Zero* Settlement Class Members objected to the Settlement, and *only four* opted out. *See* Sutor Decl. ¶¶ 11-12; Roberts Decl. ¶ 42. This exceptional participation rate and lack of objections from the Settlement Class leave no question that the class members view the Settlement favorably, which weighs heavily in favor of

final approval and further supports the "presumption of fairness."  *See, e.g.*, *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").  Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3.  Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"This factor asks[] whether … counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement."  *Pearlstein*, 2022 WL 4554858, at *4 (cleaned up).  As discussed above, Plaintiffs largely defeated MFI's Motion to Dismiss, and the Parties conducted informal discovery that involved the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Roberts Decl. ¶ 28.  Both sides have also prepared mediation statements setting forth their relevant positions and participated "in a day-long mediation allowed them to further explore the claims and defenses."  *Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013); *see also* Roberts Decl. ¶¶ 26-29.  Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue." *Beckman*, 293 F.R.D. at 475.

### 4.  Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6)

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." *Pearlstein*, 2022 WL 4554858, at *5 (internal quotations omitted).  In weighing the risks of certifying a class and establishing liability and damages, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the

outcome of the case." *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Flores v. CGI Inc.*, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (internal quotations omitted).

"Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendants], they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. In particular, Plaintiffs would face "[t]he risk of obtaining … class certification and maintaining [it] through trial," which "would likely require extensive discovery and briefing." *Beckman*, 293 F.R.D. at 475. And "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8; *see also Flores*, 2022 WL 13804077, at *8 ("The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement."). Approval of the Settlement obviates the "[r]isk, expense, and delay" of further litigation, and these *Grinnell* factors thus support preliminary approval. *Lowe*, 2022 WL 4621433, at *8.

### 5. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While Defendants could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair." *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).

### 6. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Philemon*, 2019 WL

13224983, at *12.  Instead, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Id*.  Moreover, when a settlement assures immediate payment of substantial amounts to Class Members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").  To that end, Class Counsel has made at least $4.9 million in value available to Class Members.  Settlement, ¶ III.C.2.  The Settlement provides for up to $4.9 million in full cash refunds or gift cards.[4]  On top of this, the extended warranty issued to Class Members automatically provides Class Members with additional non-monetary value that the Court must account for in valuing the Settlement. *Fleisher v. Phoenix Life Ins. Co.*, 2015

---

[4] The inclusion of Gift Cards does not make this a "coupon settlement" under to the Class Action Fairness Act for at least two reasons. *First*, the Gift Cards are not "coupons" but "vouchers." "The distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise or services." *Foos v. Ann, Inc.*, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (emphasis in original); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950-51 (9th Cir. 2015) (concluding $12 gift cards were not a "coupon settlement" under CAFA).  The Gift Cards here allow the purchase of a number of items *for free* on the Bed Tech website.  And *second*, the Gift Cards are not the only relief provided for in the Settlement, and instead are only an option alongside full cash refunds. *Foos*, 2013 WL 5352969, at *2 ("[H]aving a coupon *option* does not necessarily transform a class action settlement into a coupon settlement under CAFA … Although the class members here have the option of receiving a coupon instead of obtaining a voucher, the Court has not found any case law to suggest that such an option *requires* the class action to be deemed a coupon settlement as described in 28 U.S.C. § 1712.") (emphasis in original).

WL 10847814, at *1 (S.D.N.Y. Sept. 9, 2015) ("The non-monetary benefits also provide very substantial benefits to the Class."); *Perks v. TD Bank, N.A.*, 2022 WL 1451753, at *2 (S.D.N.Y. May 9, 2022) ("When calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, the Court has to consider the value of both the monetary and non-monetary benefits conferred on the Class.").  Thus, the $4.9 million in monetary relief combined with the substantial non-monetary relief easily meets or exceeds what Class Members would have recovered at trial.

**B.      The Rule 23(e)(2) Factors**

**1.      The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries": they purchased defective Class Products that were prone to collapse (and, in fact, did collapse).  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class."  *Id.* (internal quotations omitted).  Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel.  Roberts Decl. at Ex. 3 (Firm Resume).

**2.      The Settlement Was Negotiated At Arm's Length**

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal

quotations omitted).  Further, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process."  *Jara*, 2018 WL 11225741, at *2 (cleaned up).  Here, both counsel for Plaintiffs and for Defendants are experienced in class action litigation.  Roberts Decl. ¶¶ 37, 44.  Moreover, the Parties participated in a mediation before Judge Maas and engaged in protracted settlement discussions.  Roberts Decl. ¶¶ 25-28.

### 3.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

*"The costs, risks, and delay of trial and appeal."*  This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted *supra*, the Settlement has met each of these *Grinnell* factors.  Argument §§ I.A.1, *supra*.

*"The effectiveness of any proposed method of distributing relief to the class."*  Class Members need only submit a simple claim form—and return their Class Product to one of MFI's nearly 2,400 stores if they so choose—to receive significant monetary relief.  This is a reasonable method of distributing relief to Class Members, especially given the Court's comments that an adequate recall would have involved Class Members getting their "money back if [they] bring in the bed frame."  1/28/2022 Hearing Transcript, at 25:2-3; *see also Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at *6 (C.D. Cal. Jan. 12, 2022)

(finding distribution effective where "Class Members who still owned a Class Product could return them at any of Harbor Freight's nearly 1,200 stores" or "complete [a] claim form online").

Further, a claims process is necessary to give Class Members the option to choose between the refund option and the Gift Card option. *Shames v. Hertz Corp.*, 2012 WL 5392159, at \*12 (S.D. Cal. Nov. 5, 2012) ("[T]he actual intent of the claims process is to allow class members the opportunity to choose between several payment options.  The parties would otherwise have no way of knowing whether a particular class member wants to receive the cash option or the rental voucher.") (cleaned up).  Class Members will also automatically receive an extended warranty without needing to submit a Claim Form.  Settlement ¶ III.B.2.

*"The terms of any proposed award of attorneys' fees."*  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."  *Masters*, 473 F.3d at 437.  Here, Class Counsel has petitioned the Court for eight-hundred twenty-five thousand dollars ($825,000).  ECF No. 71.  This is a mere 16.8% of the $4.9 million in monetary relief that Class Counsel has made available, which is more than reasonable.  *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at \*11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at \*1 (S.D.N.Y. Apr. 6, 2022) (same).  And this valuation does not account for the significant non-monetary relief Class Counsel has procured, which also must be taken into consideration when determining the overall value of the Settlement as compared to the requested Fee Award.  *Perks*, 2022 WL 1451753, at \*2.  By this token, the Settlement provides *more* than $4.9 million in value, and Class Counsel's requested Fee Award is an even *smaller* portion of the Settlement.

Class Counsel's fees are also being paid separately from and in addition to any relief due to Class Members and will therefore not derogate in any way from the relief provided for. Settlement ¶¶ III.C.2, V.A.

***"Any agreement required to be identified by Rule 23(e)(3)."*** This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. No such agreement exists other than the Settlement. Roberts Decl. ¶ 48.

### 4.    The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47. Here, Class Members are entitled to the same relief, and provided that Valid Claims for refunds and Gift Cards exceed $4.9 million, rewards to Class Members will be reduced *pro rata*. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

## II.    CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Payment Card I*, 330 F.R.D. at 50. Under Fed. R. Civ. P. 23(a), a class action may be

maintained if all of the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of

Fed. R. Civ. P. 23(b).  Fed. R. Civ. P. 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law

or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."

### A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a)

#### 1.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Class includes up to 82,000 Class Products.

Roberts Decl. ¶ 31.  Numerosity is therefore met.  *Lowe*, 2022 WL 4621433, at *4 ("Numerosity

is presumed at a level of 40 members.") (cleaned up).

#### 2.    Commonality

Commonality is satisfied when the claims depend on a common contention, the

resolution of which will bring a class-wide resolution of the claims.  *Wal-Mart Stores, Inc. v.

Dukes*, 564 U.S. 338, 349-50 (2011).  "Although the claims need not be identical, they must

share common questions of fact or law."  *Lowe*, 2022 WL 4621433, at *4.  Instead, "Rule

23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (cleaned up). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* (cleaned up)

Here, there are "a range of common questions, including whether there was a [bed frame] defect; whether [Defendants] knew about the defect; whether the defect was material to reasonable consumers; whether [Defendants] breached an implied warranty; and the proper measure of damages." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *7 (C.D. Cal. Sept. 23, 2020) (cleaned up). Further, the Class Products "present a common question of product defect." *Id.* Accordingly, commonality is satisfied.

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Minor variations in the fact patterns underlying individual claims do not preclude a finding of typicality when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 72 (S.D.N.Y. 2022) (cleaned up). Here, "[P]laintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories": Defendants' manufacture and sale of defective Class Products. *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014); *see also* SAC ¶¶ 1, 3-11, 17-24. Accordingly, typicality is satisfied.

### 4. Adequacy

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys

are qualified, experienced, and able to conduct the litigation." *Lowe*, 2022 WL 4621433, at *5 (internal quotations omitted). Here, Plaintiffs—like each and every one of the Settlement Class Members—purchased a Class Product that was defective in that it was prone to collapse (and in fact did collapse). SAC ¶¶ 3-10. "The fact that [P]laintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

Likewise, Class Counsel is more than qualified to represent the Settlement Class. "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008." *Ebin*, 297 F.R.D. at 566; *see also* Roberts Decl. Ex. 3 (Firm Resume of Bursor & Fisher, P.A.). Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Class, aggressively pursuing those claims, defeating a motion to dismiss, conducting informal discovery, participating in a private mediation with Judge Maas, and ultimately, negotiating a favorable class action settlement. Roberts Decl. ¶¶ 5-30. In sum, Class Counsel has vigorously prosecuted this action. *Id.*

**B.      The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both predominance and superiority are met here.

**1.      Predominance**

"Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues

20

must predominate in order to warrant adjudication as a class." *Philemon*, 2019 WL 13224983, at

*9. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized

proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotations

omitted). "Satisfaction of Rule 23(a) [as Plaintiffs have done here] goes a long way toward

satisfying the Rule 23(b)(3) requirement of commonality." *Lowe*, 2022 WL 4621433, at *6

(cleaned up).

Courts have found that predominance is satisfied in product defect cases like this one. *In

re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *13

(S.D.N.Y. May 1, 2008) (predominance satisfied "because members of the class allege the same

product defect and unlawful sales practice of Sony"); *see also Kaupelis*, 2020 WL 5901116, at

*14. Predominance is therefore met.

### 2.    Superiority

Under Rule 23(b)(3)'s superiority requirement, Plaintiffs must demonstrate that a "class

action would achieve economies of time, effort, and expense, and promote uniformity of decision

as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." *Philemon*, 2019 WL 13224983, at *9 (citing *Brown v. Kelly*, 609 F.3d 467,

483 (2d Cir. 2010)). Fed. R. Civ. P. 23(b)(3) sets forth a non-exclusive list of relevant factors,

including whether individual class members wish to bring, or have already brought, individual

actions; and the desirability of concentrating the litigation of the claims in the particular forum.[5]

---

[5] Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement. *See Amchem Prods., Inc. v. Windsor*, 521
U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a
district court need not inquire whether the case, if tried, would present intractable management
problems, for the proposal is that there be no trial"); *Hill v. County of Montgomery*, 2020 WL

Here, "a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class [M]ember is otherwise entitled." *Lowe*, 2022 WL 4621433, at *6.  Further, "litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class [M]embers, particularly those who lack the resources to bring their claims individually." *Id*.  Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the Class's claims, while "the individual damages may be too small to make litigation worthwhile." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *14.

## III.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009).  Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options.  See Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa U.S.A.*, 396 F.3d at 114 (cleaned up).

---

5531542, at *4 (N.D.N.Y. Sept. 14, 2020) ("Whether the case would be manageable as a class action at trial is not of consequence here in the context of a proposed settlement.").

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* FED. JUDICIAL CTR., JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice via a postcard or email to 84% of the Settlement Class.  *See* Sutor Decl. ¶ 10.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process.  *See* ECF No. 70 ¶ 7.  The Plan has now been fully carried out by professional settlement administrator RG/2 Claims Administration, LLC ("RG/2").  Pursuant to the Settlement, Defendant provided RG/2 with a list of 100,341 available names, addresses and emails of potential Settlement Class Members.  *See* Sutor Decl. ¶ 4. Through a combination of direct e-mail and postcard notice, the Court-approved Notice Plan successfully reached 84% of the Settlement Class.  *See id.* ¶¶ 7-10.  These notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions.  *See id.* ¶ 5.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated: June 12, 2023                              Respectfully submitted,

                                                  **BURSOR & FISHER, P.A.**

                                                  By: */s/ Max S. Roberts*
                                                       Max S. Roberts

                                                  Max S. Roberts
                                                  Julian C. Diamond
                                                  1330 Avenue of the Americas, 32nd Floor
                                                  New York, NY 10019
                                                  Telephone:  (646) 837-7150
                                                  Facsimile:   (212) 989-9163
                                                  Email: mroberts@bursor.com
                                                          jdiamond@bursor.com

                                                  **BURSOR & FISHER, P.A.**
                                                  Joel D. Smith (*Pro Hac Vice*)
                                                  1990 North California Blvd., Suite 940
                                                  Walnut Creek, CA 94596
                                                  Telephone: (925) 300-4455
                                                  Facsimile:  (925) 407-2700
                                                  Email: jsmith@bursor.com

                                                  *Class Counsel*